## GIANT-POWDER Co. *v.* OREGON PAC. RY. Co. *et al.*

*(Circuit Court, D. Oregon.   June 16, 1890.)*

1. MECHANICS' LIENS—PROPERTY SUBJECT TO—RAILWAYS.
    The general phrase in the act of 1885, "any other structure," following, as it does, a specific enumeration of works declared to be subject to a lien for labor and materials furnished for their construction, such as a "building," "ditch," "flume," and "tunnel," *held* to include a railway.

2. SAME—PROPORTION OF RAILROAD SUBJECT TO LIEN.
    A person entitled to a lien on a railway for materials furnished for its construction may, in his notice of lien, confine his claim to that portion or section of the road in the construction of which his material was used.

3. SAME—MATERIALS—GIANT-POWDER.
    Giant-powder furnished by the manufacturer to a contractor for the construction of a railway, and used by the latter in the progress of such work, is "material," within the purview of the lien law of 1885, for the value of which, such manufacturer is entitled to a lien on the railway, or such portion thereof as the powder was used in the construction of.

*(Syllabus by the Court.)*

In Equity.

*Mr. George H. Williams,* for plaintiff.

*Mr. L. Flinn,* for defendants.

DEADY, J.   This suit is brought by the Giant-Powder Company, a corporation of California, against the Oregon Pacific Railway Company and the Wallamet Valley & Coast Railway Company, corporations of Oregon, and James Searle and E. B. Deane, doing business under the firm name of Searle & Deane, citizens of Oregon, to enforce a lien for material on a certain section of the Wallamet Valley & Coast Railway.

It is alleged in the bill that the defendant, the Wallamet Valley & Coast Railway Company, is the owner of said railway, which extends from Yaquina bay, Or., eastward through Corvallis, into the Cascade mountains.   That in 1888 and 1889 said company contracted with the defendant the Oregon Pacific Railway Company to construct said road eastward from Albany, Or.   That on August 25, 1888, the Oregon Pacific Railway Company contracted with the defendants Searle & Deane to construct the portion of said road commencing at station numbered 2659, plus 78, in Marion county, and extending from there eastward for 15 miles along the established route of the same; in which contract it was provided that Searle & Deane should furnish all the material and labor for such construction.   That Searle & Deane commenced work on the road on September 1, 1888, and completed said section thereof, according to the contract, on January 15, 1889; and there remained due them and unpaid thereon the sum of $111,393.62.

That the plaintiff, between September 26 and December 31, 1888, furnished Searle & Deane "electrical material, powder, fuse, and caps, necessary and proper materials to use in the prosecution of said work;" and the said defendants (Searle & Deane) agreed to pay the plaintiff the sum of $7,148.82 therefor; that said material was used by Searle &

Deane in the construction of said road; and the value thereof, namely, $7,148.82, is now due from them to the plaintiff.

That on January 22, 1889, the plaintiff filed with the clerk of Marion county its claim for such material, under the lien law of Oregon, for the purpose of establishing a lien upon said section of said road, and the land for 30 feet on either side of the center line thereof, which claim was duly recorded; and that the plaintiff has obtained a judgment against Searle & Deane for said money, but nothing has been or can be made on the same.

The prayer of the bill is that it be adjudged that the plaintiff has a lien on said section of the road for the amount due it for said material and costs of suit, including the cost of preparing such lien and a reasonable attorney fee, and that the property may be sold to satisfy the same.

The defendants the railway companies demur to the bill.

On the argument the following points were made in support of the demurrer:

(1) At and prior to the filing of the alleged lien, the law of the state did not give a lien on railways to material-men.

(2) A lien cannot be had on a part or section of a railway.

(3) The material in question did not enter into the construction of the road, but was merely used by the contractors as a part of their plant or means in performing their contract.

Section 1 of the act of February 11, 1885, (Comp. 1887, § 3669,) provides that every person "furnishing material of any kind to be used in the construction * * * of any building, wharf, bridge, ditch, flume, tunnel, fence, machinery, or aqueduct, or any other structure or superstructure, shall have a lien upon the same for the * * * materials furnished * * * at the instance of the owner of the building or other improvement, or his agent; and every contractor * * * shall be held to be the agent of the owner for the purposes of this act."

Section 5 of the act (Id. § 3673) provides that any material-man desiring to claim the benefit of the act must, within a certain time, "file with the county clerk of the county in which such building or other improvement, or some part thereof, shall be situated, a claim containing a true statement of his demand," with the name of the owner of the property, and the person "to whom he furnished the materials; and also a description of the property to be charged with said lien, sufficient for identification."

Section 12 of the act (Id. § 3681) declares:

"The words 'building or other improvement,' wherever the same are used in this act, shall be held to include and apply to any wharf, bridge, ditch, flume, tunnel, fence, machinery, aqueduct to create hydraulic power, or for mining or other purposes; and all other structures and superstructures, whenever the same can be made applicable thereto."

By section 1 of the act of February 25, 1889, (Sess. Laws, 75,) any subcontractor, material-man, or laborer who shall "furnish to any contractor, to any railroad corporation, any fuel, ties, materials, supplies, or other article or thing, or who shall do or perform any work or labor

for such contractor, in conformity with any terms of any contract, express or implied, which such contractor may have made with any such railroad corporation, shall have a lien upon all property, real, personal, and mixed, of said railroad corporation."

This is a most extraordinary act. The lien of the material-man or laborer is declared to exist against all the property of the corporation, including "personal," without limit as to situation or place of existence, on the furnishing of materials or the performance of labor, without any record being made of the same, or notice to any one of the claim, except in the case of a laborer, when notice is required to be given to the corporation that he will hold its property for his "pay."

It is contended by counsel for the demurrer that the passage of the act of 1889 amounts to a legislative declaration that the act of 1885 did not include or apply to railways.

The subsequent act might have been passed out of abundance of caution, and not upon any well-grounded or serious impression that the former was wanting or insufficient in this respect. Be this as it may, the opinion of the legislative assembly of 1889 as to the scope and purpose of the act of 1885 is of very little moment, and can have no weight in the construction of the latter one, concerning rights and transactions which were vested or transpired before its existence.

The intention of the legislature of 1889 in passing the act of that year is a proper subject of judicial inquiry and determination; but its opinion of the scope and effect of the act of 1885, if it had any, is not material in this case. Considering the peculiar provisions of the act of 1889, the most obvious reason for its passage is that the legislature thereby intended to take the subject of claims against railway corporations for materials and labor furnished, out of the operation of the general lien law of 1885, and put it under this special act, which does not require any notice of the claim to be filed with any clerk or other officer, and provides a special proceeding, in which all such claims must be enforced as in one suit.

It must be admitted that, if the legislature intended to include railways in the act of 1885, it is not apparent why so important a subject was not mentioned in the long list of those expressly named.

Still, the language of the act is certainly broad and comprehensive enough to include a railway. It is certainly a "structure," if not a "superstructure." A lien can as conveniently be imposed upon it as upon a "ditch," "flume," or "tunnel." These instances of lienable property are expressly mentioned in the statute; and the scope and operation of this general term, "structure," immediately following this specific enumeration, must be ascertained by reference to the latter. The doctrine of *noscitur a sociis* applies; and the significance of the word "structure," in this statute, is indicated by the company it is found in,—"ditch," "flume," and "tunnel." If the language of the act was, "building or other structure" only, then it might not be construed as including a railway. But the words, a "ditch or any other structure," cannot, consistently with this established rule of construction, be held to exclude a rail-

way. A railway is literally and technically a "structure." It consists of the bed or foundation, which may be of earth, stone, or trestle-work, on which are laid the ties and rails. These, taken together, constitute a "structure," in the full sense of the word,—a something joined together, built, constructed. Freund, Lat. Lex. "*Structio*," "*Struo;*" Worcest. Dict. "Structure."

In 2 Jones on Liens, § 1618, it is said that statutes giving a lien for labor and materials furnished for the construction of "buildings" are not usually regarded as being applicable to railways. But the author says, (section 1624,) where the terms "structure," "erection," "improvement" are used in the statute, it is possible to establish a lien for anything that can be attached to the realty; and cites *Neilson* v. *Railroad Co.*, 44 Iowa, 71, where it appears to have been held, under such a statute, that a lien existed against a railway for ties used in its construction.

In *Forbes* v. *Electric Co.*, 23 Pac. Rep. 670, it was held by the supreme court of this state that poles set in the ground, and connected together by wire, in the usual way for the transmission of electricity, between Portland and Oregon City, constituted a "structure," within the meaning of that term as used in section 3669, (Comp. 1887;) and therefore a lien attached thereto for work done thereon at the instance of a contractor. In delivering the opinion of the court, Mr. Justice STRAHAN said:

"Do these poles planted in the ground, connected together with wires and insulators, constitute a structure, within the true intent and meaning of the statute? In answering this question, but little aid can be had from the decisions of other states, for the reason that no general principle of law is involved, and such decisions have generally turned upon the special or peculiar phraseology of the particular statute."

A railway is certainly a "structure," within the authority of this decision. The railway and the wireway, notwithstanding the different uses to which they are subject, are both structures, upon which a lien may be had as security for the labor and materials that entered into their composition.

The case of *Buncombe Co. Com'rs* v. *Tommey*, 115 U. S. 122, 5 Sup. Ct. Rep. 626, 1186, cited on behalf of the demurrer, is not in point. It turned on the construction of a statute of North Carolina that gave a lien on a "building, * * * lot, farm, or vessel, or any kind of property not therein enumerated," for "the payment of all debts contracted for work done on the same, or material furnished."

Of the specific terms used in this statute, only two—"building" and "vessel"—include structures; and they do not, in the nature of things, suggest or show that the following general phrase—"any kind of property"—was intended to include such a structure as a railway. On the contrary, it is manifest that the general term "property" has reference to, and is to be interpreted, as a mere expansion of the specific kinds of "property" or land just mentioned,—"lot" and "farm."

The objection that a lien cannot be had on a part or section of a railway for labor or material furnished for its construction does not strike me favorably.

In 2 Jones on Liens, § 1619, decisions to that effect are referred to, but they appear to have been made on the language of a statute giving a lien on "the road" as a whole; and also on the ground of public policy, which it is said will not permit a sale of a portion of a road on execution. It is easy to say a thing is against public policy, but that does not make it so. Public policy is manifested by public acts, legislative and judicial, and not private opinion, however eminent. I have no knowledge of any such public policy prevailing in this state. A railway is nothing but private property devoted to public use, the same as a warehouse, and is so far, and no further, the subject of public policy. The owner, be he a natural person or a private corporation, can disuse or dispose of it, in whole or in part, at his or its pleasure.

True, it was held in *Brooks* v. *Railway Co.*, 101 U. S. 443, that a person who furnished labor and materials used in the construction of a certain portion of a railway had a lien on the whole of it. This ruling was made in favor of the lienor, and it does not follow from anything decided in that case that he might not have limited his lien to the portion on which he bestowed his labor and materials, and enforced it accordingly.

But there is a public policy of this state, as shown by its legislation, that should be considered in this connection, which is that persons who furnish labor or materials to be used in the construction of railways shall have a lien thereon as a security for the value of such labor and materials. To promote this policy, and to produce the practical results intended by the legislature, the statute giving this lien should be construed so far as in reason and right it may, and all mere doubts as to the extent and manner of its application should be so resolved.

The statute (Comp. 1887, § 3673) only requires the notice of the lien to be filed with the clerk of one county,—that in which the "building or other improvement, (structure,) or some part thereof, shall be situated." That was done in this case. If the effect of the transaction is to give the plaintiff a lien on the whole road, it may sell the whole road. But my own judgment is that even if the plaintiff might claim a lien on the whole road, it may, nevertheless, limit its lien by its notice to the part or section of the road for the construction of which it furnished material.

The notice also contains the name of the owner of the road, and the persons to whom the plaintiff furnished the material, as provided in said section, and also a description of the property "to be charged with said lien, sufficient for identification," in these words:

"The railroad known as the 'Wallamet Valley and Coast Railroad,' being built by the Oregon Pacific Railroad Company, and being that portion of said railroad commencing at station No. 2,659, plus 73, on the line of said road in Marion county, state of Oregon, and extending from there in an easterly direction a distance of fifteen miles along the surveyed and located route of said road in said county and state, as shown by the maps * * * of the permanently located line of said railroad in the office of said company."

If there is no Wallamet Valley & Coast Railway in the state of Oregon which passes through Marion county, then this alleged lien does not ex-

ist; but, if there is,—and I suppose of this fact there is no doubt, at least on this demurrer,—then the description given of it, and the section on which the plaintiff claims a lien, sufficiently identified it.    A conveyance of a farm, said to be situate in Marion county, Or., belonging to the Oregon Pacific Railway Company, and known as "Blackacre," would be good, so far as description goes.

Was this material "used" in the construction of this section of this road, within the meaning of this statute?

In *Basshor* v. *Railway Co.*, 65 Md. 99, 3 Atl. Rep. 285, cited by counsel for the demurrer, it was held, under a statute giving a lien on a bridge for all materials used "in or about" its construction, that a person furnishing a contractor with machinery wherewith to build a bridge could not have such lien.

Admitting the correctness of this decision, as I do, the cases are not, in my judgment, parallel.    The machinery and appliances furnished the contractor in that case, although "used" in the construction of the bridge, did not enter into the structure and become a part of it.    They were the contractor's "plant," and retained their identity and fitness for further use, saving the limited and gradual wear and tear incident to such use.

This powder was not only "used" in the construction of this road, but it was thereby necessarily consumed, and it was so intended.    It was furnished to be so used in the construction of this road.    Nice questions may arise as to whether material is "used" in the construction of a road as a tool or plant simply, or so used and consumed as to entitle the furnisher to a lien on the result for its value.

The food furnished a contractor for his workmen may be said to be "used" and "consumed" in the construction of the road on which they work; but this is only so in a remote and consequential way or sense. The food does not enter directly into the structure, and is not so used. Mason-work may be done on a road in a dry country or season, when large quantities of water must be hauled many miles for the preparation of the necessary mortar.    Upon the completion of the structure and the hardening of the mortar, the water has as thoroughly disappeared as the powder after the blast.    Again, lumber may be used in the construction of a building for the purpose of scaffolding.    However, it does not thereby literally enter into the composition of the building, nor, so to speak, become a part of it.    But, in my judgment, both it and the water have been "used" in the construction of the building and mason-work, within the meaning of the lien law, and the purpose for which it was enacted.

And so I think this powder was "used" in the construction of this section of the road, whereby it was consumed, not gradually and incidentally, as a tool or part of a contractor's plant, but wholly and at once, in aiding to clear and fit the road-way for the reception of the ties and rails.

The demurrer is overruled.