## Avery & Sons, et al. v. Woodruff & Cahill, et al.

(Decided June 13, 1911.)

### Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Liens—Labor Performed—Material Furnished—Contractors and Material Men's Liens—The Statute nowhere requires that the labor performed and material furnished shall become a part of and remain in the building after its completion. It merely gives a lien to the persons who perform labor or furnish material in the erection of the building or the improvement of real estate in any manner.

2. Same—Extent of Liens—A contractor has a lien upon a building he erects to the extent of his contract price, and it necessarily follows that the subcontractor, laborers and materia'man would also have a lien under the statute.

W. W. DAVIES for appellants.

HARRY A SHAW for appellees.

EDWARDS, OGDEN & PEAK for Woodruff & Cahill.

DALLAM, FARNSLEY & MEANS for W. P. Brown & Sons.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

The cases of Avery & Sons, et al. v. Woodruff & Cahill; Same v. Cunningham, and Same v. Brown & Sons Lumber Co., were consolidated and tried together in the lower court. Woodruff & Cahill recovered a judgment for $659.19, Cunningham for $550.75, and Brown & Sons for $283.79, the value of lumber furnished by each of the firms to be used, and which was used and practically consumed in the erection of a concrete building on a lot owned by Avery & Sons, in Louisville, Ky. The appellees sold this lumber to E. E. Peterson, a subcontractor under Westlake Company, who had the contract with appellant for the erection of the house. Appellees delivered the lumber on the lot and it was used in the erection of the building. It was agreed in the Cunningham case that, "nothing remained of any of said lumber but about ten per cent. which was in a cut up, sawed up and dirty condition, such remnants being the moulds knocked to pieces."

In the Woodruff & Cahill case it was agreed that all the lumber furnished was destroyed in the erection of the building, except about eight thousand feet which remained in the building after its completion.

In the Brown & Sons case it was agreed that "none of said lumber remained in said building, but was destroyed and consumed in the use for which it was purchased, to-wit; in making concrete forms."

The only question made by appellants on this appeal is that the statutes do not allow any of appellees a lien for their lumber, except Woodruff & Cahill for that which remained in the building as their lumber did not become a part of and remain in the building after its completion. The statutes provide:

"A person who performs labor or furnishes material in the erection, altering or repairing of any house, building or other structure * * * or for the excavation of cellars * * * or for the improvement in any manner of real estate shall have a lien therefor," etc.

In Waddy-Bluegrass Creamery Co. v. Davis Rankin, et al., 103 Ky., 579, this court said:

"The statutory lien given the mechanic while in derogation of the common law is still within its spirit, and is the outgrowth of the spirit of encouraging general improvement. Its history is that of enlargement and extension in the thing covered, the persons entitled to the lien as well as a liberality in the construction of the statutes so as to pay the laborer his hire."

In the case of Braekel v. Shade, 118 S. W., 1196, the Kansas court said:

"The rule that calls for a strict construction of statutes in derogation of the common law is not applicable to the mechanic's lien statutes. 'The better doctrine now is that these statutes are highly remedial in their nature and should receive a liberal construction to advance the just and beneficent objects had in view in their passage.'"

It will be noticed that the statute no where requires that the labor performed and material furnished shall become a part of and remain in the building after its completion. It merely gives a lien to the persons who perform labor or furnish material in the erection of the building or the improvement of real estate in any

manner. To give the statute the strict construction contended for by appellants would prevent persons who perform labor in the erection of a building, but who do not actually perform labor on the building, from obtaining a lien, as their labor does not remain a part of the building. This construction would be in conflict with the case of Fowler & Guy v. Pompelly, 25 Ky. Law Rep., 615, wherein this court in considering a claim for hauling frames, dressed lumber, laths, etc., to a lot where a building was being constructed, said:

"It is conceded that the materialman who furnished these articles to appellant to haul. and the laborers and the contractor who actually erected the building, have liens for the material furnished and the labor performed, yet it is claimed by appellee that these appellants, who performed labor just as necessary to the erection of the building as the persons who furnished the material or the persons who nailed the lumber on the building, have no lien. We can not agree to this construction of the statute. In our opinion, under a proper construction of the statutes, they are just as much entitled to a lien for their services as any of the persons named."

In the case at bar, the material furnished by appellees was raw lumber to be used in the erection of the concrete building, and it was contemplated by the parties at the time it was furnished that it would be totally used up in making forms in the erection of the Avery & Sons' plant. If the lumber had been furnished to make a scaffold, molds or forms with the intention of using them in the erection of that building and then carry them away and use them in constructing other buildings, then no lien would attach, as they would be regarded as a part of the appliances of the workmen and would occupy the same place as a hammer, saw or other tool used by the workmen, for which no lien is allowed by the statute. (Some States do, however, allow liens for scaffolding.) These appellees furnished material to be used in the erection of a building, which was as necessary as the sand, cement, water or other material. In fact, the building could not have been erected without lumber to be used for the purpose for which appellees' was furnished. Suppose the contractor had been compelled to purchase water from some one and have it hauled to the building, could it be said

that the person who hauled it and the person from whom it was purchased had no lien under the statute because the water did not remain in the building? The water was absolutely necessary to the erection of the building, and it seems to us that the person who hauled it would be as much entitled to a lien as the person who hauled the doors, laths, dressed lumber, etc., in the case supra. (Giant Powder Co. v. Ore. Pac. R. R. Co., 42 Fed. Rep., 470.) If the first clause of the section of the statutes copied does not cover such things the latter one, "for the improvement in any manner of real etate shall have a lien therefor," does cover them.

The contractor in estimating the cost of the building before he took the contract, took into consideration the cost of the lumber he would have to use for the purposes appellees' was used, and made his bid accordingly. Undoubtedly, the use of appellees' lumber increased the value of the lot, and the contractor had a lien thereon to the extent of his contract price; and it necessarily follows that the sub-contractor. laborers and materialmen would also have a lien under the statute.

In the case of Repauna Chem. Co. v. G. & N. Ry. Co., 59 Mo. App., 6, the court, after citing several authorities, said:

"The rule to be deduced from the foregoing authorities is that, in order to maintain a lien for the materials furnished, it is not necessary in all cases that such materials should actually have gone into the structure and formed a part thereof. It is sufficient if their use was necessary, and they were in fact used or consumed in the making of the improvements."

In the case of Giant Powder Co. v. Ore. Pac. R. R. Co., supra, it is said:

"Was this material 'used' in the construction of this section of this road within the meaning of this statute? In Bashor v. B. & O. R. R. Co., 65 Md., 99, 5 Atl. Rep., 285, cited by counsel for the demurrer, it was held, under a statute giving a lien on a bridge for all material 'used in or about' its construction that a person furnishing a contractor with machinery wherewith to build a bridge could not have such a lien. Admitting the correctness of this decision, as I do, the cases are not, in my judgment, parallel. The machinery and appliances

furnished the contractor in that case, although 'used' in the construction of the bridge, did not enter into the structure and become a part of it. They were the contractor's 'plant,' and retained their identity and fitness for further use, saving the limited and gradual wear and tear incident to such use.

"This powder was not only 'used' in the construction of this road, but it was thereby necessarily consumed, and it was so intended. It was furnished to be used in the construction of this road. Nice questions may arise as to whether the material is 'used' in the construction of a road as a tool or plant simply, or so used and consumed as to entitle the furnisher to a lien on the result for its value. The food furnished a contractor for his workmen may be said to be 'used' and 'consumed' in the construction of the road on which they work; but this is only so in a remote or consequential way or sense. The food does not enter directly into the structure, and is not so used. Mason work may be done on a road in a dry country or season, when large quantities of water must be hauled many miles for the preparation of the necessary mortar. Upon the completion of the structure and the hardening of the mortar the water has as thoroughly disappeared as the powder after the blast."

Continuing the opinion in that case the court held that the person who furnished the water was entitled to a lien.

Appellants cite the case of Probst v. U. S. Fidelity & Guaranty Co., 30 Ky. Law Rep., 63, as the only one in point. In that case the lumber was furnished for the purpose of making forms to be used in erecting the concrete part of a building. In that case Probst had a bond from the Guaranty Company for only $2,000 to secure him against loss by reason of having to pay lien claims. A sub-contractor defaulted and Probst paid lien claims to the amount of about $3,500 and sued the bonding company on the bond. The company answered asserting that all or most of the claims paid by Probst were not lienable claims. Probst recovered the full amount of the bond. Among the claims was a small one for lumber to make forms for the concrete work, which the lower court determined was not lienable The case was appealed and this court affirmed the judgment, but

we did not consider the question as to whether the small claim was lienable or not, as it was not necessary, there being enough lien claims without it to consume the $2,000 bond. But that case is unlike this one, as there was nothing in that one to show that the lumber was destroyed or consumed in the erection of the building, it might have been used in erecting other buildings.

It view of the agreed facts of this case, the statute and authorities referred to, we conclude the lower court did not err in giving appellees a lien for their claims, and the judgment is affirmed.