# Mid-Continent Petroleum Corporation v. Southern Surety Company.

(Decided June 22, 1928.)

## Appeal from Jefferson Circuit Court (Common Pleas, Fourth Division).

1. Municipal Corporations.—Bond of contractor constructing sewer project for city held to show intent to protect laborers and materialmen, in view of provisions as to payment for "all labor performed or furnished, and for all materials used in the carrying out" of contract.
2. Municipal Corporations.—Materialman for whose benefit bond of contractor constructing sewer project was executed may maintain action thereon.
3. Municipal Corporations.—Gasoline and oils furnished contractor constructing sewer, for use in engines used in construction, held lienable materials.

4.  Municipal Corporations.—Mechanics' and Materialmen's Lien Law
    (Ky. Stats., secs. 2463-2504a), while in derogation of common law,
    should be liberally construed

5.  Municipal Corporations.—While county or municipal property de-
    voted to public use will not be sold to satisfy materialmen's lien,
    one furnishing materials to contractor may file lien and have sub-
    jected to payment of debt money due to contractor by munici-
    pality.

ROBERT F. VAUGHAN for appellant.

J. S. McELROY, JR., for appellee.

OPINION OF THE COURT BY JUDGE REES—Reversing.

The commissioners of sewerage of the city of Louisville entered into a contract on August 17, 1925, with H. O. Schaefer & Sons for the construction of a certain sewer project. The contractor executed bond for the faithful performance of the work with the appellee, Southern Surety Company, as surety. The bond contained this provision:

> "Now, the condition of this obligation is such that if the said principal shall well and truly keep and perform all the agreements, terms and conditions of said contract on their part to be kept and performed, and shall also pay for all labor performed or furnished, and for all materials used in the carrying out of said contract, then this obligation shall be void; otherwise it shall remain in full force and virtue."

During the progress of the work the contractor encountered considerable rock, which was removed by placing charges of dynamite in holes drilled into the rock by compressors. Excavating machinery was used in digging the trench in which the sewer pipe was laid; gasoline pumps were used in pumping water from the trench and hoisting machines for disposing of the excavated material. In all of these operations machinery was used by the contractor which required gasoline as fuel and oil as a lubricant. During July, August, and September, 1926, the appellant, Mid-Continent Petroleum Corporation, sold and delivered to H. O. Schaefer & Sons gasoline and oil to the amount of $3,050.47, all of which was consumed by the machinery which was used for digging and preparing the trench. Before the work was completed the contractor became insolvent and the appellee, Southern

Surety Company, completed it. Appellant presented to the appellee for payment its claim for oil and gasoline furnished the contractor, and, payment having been refused, this action was brought to recover from the surety.

Substantially the foregoing facts were alleged in the petition as amended and copies of the contract between Schaefer & Sons and the commissioners of sewerage and of the bond were filed as exhibits. The trial court sustained a demurrer to the petition as amended on the theory that gasoline and oil when used under such circumstances are not "materials" within the meaning of the Mechanics' and Materialmen's Lien Law of Kentucky, only such articles being lienable as actually enter into a structure or become part of it or come into direct contact with it.

It is insisted for appellee: (1) That no action lay on the bond by materialmen; (2) that even if the bond could be construed as a contract for the benefit of materialmen, only those having lienable claims could sue; (3) that the claim of appellant was not a lienable claim.

The contract between H. O. Schaefer & Sons and the commissioners of sewerage contains the following provision:

"The contractor shall do all the work and furnish all the materials, tools and appliances necessary or proper for performing and completing the work required by this contract, in the manner and within the time herein agreed upon."

The contract also provides:

"The contractor shall indemnify and save harmless the city and commission from all claims relating to labor and materials furnished for the work."

It will be observed that the contract only provides that the contractor shall indemnify and save harmless the city and commission from all "claims relating to labor and materials." But the terms of the bond go beyond the terms of the contract, and, after providing that the principal shall keep and perform all the agreements, terms, and conditions of the contract on its part to be kept and performed, that the contractor "shall also pay for all labor performed or furnished and for all materials used in the carrying out of said contract." The commission not only sought protection against loss to the city, but in the bond inserted a provision for the benefit of the laborers and materialmen.

The appellee relies on the case of Dayton Lumber & Manufacturing Co. v. New Capital Hotel, 222 Ky. 29, 299 S. W. 1063, in support of its contention that the bond here in question was not intended to be for the benefit of materialmen. In that case the bond did not require the contractor to pay for all labor and material and did not purport to be for the benefit of laborers and materialmen, but only stipulated that the principal would indemnify and save harmless the hotel company from any pecuniary loss from the breach of any of the terms of the contract. Construing the contract and bond together, it was held the bond was for the benefit of the obligee and not for the benefit of materialmen. Here, however, after a provision in the bond for indemnification of the obligee, the surety undertakes that the contractor ''shall also pay for all labor performed or furnished and for all materials used in the carrying out of said contract.'' This covenant was unnecessary for the protection of the obligee, and the only purpose for which it was inserted was to bind the surety for the payment of claims for labor and material. If it does not have this effect it is meaningless, since the obligee was fully protected by the preceding clause. The bond is almost identical in terms with the bond in Fidelity & Deposit Co. v. Hegewald, 144 Ky. 790, 139 S. W. 975, which was construed as a contract for the benefit of materialmen. See, also, Federal Union Surety Co. v. Commonwealth, 139 Ky. 92, 129 S. W. 335, and Owens v. Georgia Life Insurance Co., 165 Ky. 507, 177 S. W. 294.

In National Surety Co. v. Daviess County Planing Mill Co., 213 Ky. 670, 281 S. W. 791, the board of education of the city of Owensboro let a contract for the construction of a school building. The contractors executed bond to the board of education by which they undertook to faithfully perform the contract. After providing that the principal should fully indemnify and save harmless the owner from all cost and damage which it might suffer by reason of the failure of the contractors to faithfully perform the contract on their part, and that they should fully reimburse and repay the owner all outlay and expense which the owner might incur in making good such default, the bond contained this clause: ''And shall pay all persons who have contracts directly with the principal for labor and materials.'' It was held that the bond was for the benefit of materialmen. On the authority of the cases cited, supra, we conclude that the wording of

the bond shows an intent to protect laborers and materialmen.

The case of National Surety Co. v. Daviess County Planing Mill Company, supra, likewise decides adversely to appellee's contention the question whether appellant may maintain an action on the contract made for its benefit. In that case it was held that the materialman for whose benefit the bond was executed might maintain an action thereon. See, also, Fidelity & Deposit Co. v. Hegewald, supra; St. Paul Foundry Co. v. Evenson, 169 Minn, 485, 211 N. W. 834, 213 N. W. 352.

There is a diversity of opinion among the courts as to whether or not gasoline and oil are lienable materials when furnished to a contractor and used under circumstances similar to those of this case. Until recently a majority of the courts denied liens for materials which, though employed or consumed in the work, became no part of the structure, but now there is a tendency to relax that rigid rule and to allow liens to the extent to which the materials are consumed or depreciated in the work. In Avery & Sons v. Woodruff, 144 Ky. 227, 137 S. W. 1088, 36 L. R. A. (N. S.) 866, it was held that lumber furnished for the forms in which to mold the concrete for a building is lienable material if it is destroyed in the use although it became no part of the building. Some of the cases from other jurisdictions in which this rule has been followed are Barker & S. Lumber Co. v. Marathon Paper Mills Co., 146 Wis. 12, 130 N. W. 866, 36 L. R. A. (N. S.) 875; E. R. Darlington Lumber Co. v. Westlake Construction Co., 161 Mo. App. 723, 141 S. W. 931; Chicago Lumber Co. v. Douglas, 89 Kan. 308, 131 P. 563, 44 L. R. A. (N. S.) 843.

In Fidelity & Deposit Co. v. Hegewald, supra, the commissioners of sewerage of the city of Louisville let a contract for the construction of a system of sewers, and the contractor in excavating for and building the sewers used certain machines which in the course of the work became out of repair, and the Hegewald Company was employed by the contractor to repair them and replace certain worn-out parts. The service rendered by the Hegewald Company was held such as to entitle it to a mechanics lien. Referring to the surety's liability on the bond, the court said:

"It will be observed that the bond does not limit the surety's liability to pay only for all labor

performed or furnished and material used in the
work, but for such labor and material as is used in
the carrying out of the contract. In order to carry
out the contract it was essential that the construc-
tion company should have the machinery which it
used in the work. This machinery could only be ser-
viceable when it was in order. When its parts were
worn or dulled it would not properly do the work.
The workmen engaged in the work were necessarily
depending upon the concrete mixer and locomotive
crane and shell digger and sand dryer, etc., to pre-
pare for and carry on the work, just as the brick
masons were depending on the scaffolding which
would have to be erected from time to time to enable
them to lay the brick, or turn the arch of the sewer.
The work of repairing these machines and supplying
the necessary parts was as essential in order to carry
out the contract as was the work of the carpenter in
building the scaffolding upon which the brick mason
could stand to use the mortar which had been mixed
by the concrete mixer. Neither went into the build-
ing of the sewer. When completed the machinery
would be carted away to be used in other places. And
so, likewise, when completed, the scaffolding would
be taken away.''

Coming now to the question sharply in issue on this
appeal, viz., whether the gasoline and oil furnished by
appellant were lienable materials, it appears that a
number of courts have held that coal and gasoline used
to generate power and oil used to lubricate machinery
employed by the contractor in construction work are not
lienable articles. The precise question has never been be-
fore this court, but the opinion in Fidelity & Deposit Co.
v. Hegewald, supra, is strongly persuasive that under our
construction of the mechanics' and materialmen's stat-
ute, gasoline and oil when so furnished and used are lien-
able materials. The cases holding to the contrary are
from states where the lien statute is strictly construed.
Schultz v. C. H. Quereau Co., 210 N. Y. 257, 104 N. E.
621, L. R. A. 1915E, 986, Ann. Cas. 1915B, 965; Sampson
v. Commonwealth, 202 Mass. 326, 88 N. E. 911; Barker
Lumber Co. v. Marathon Paper Mills Co., 146 Wis. 12,
130 N. W. 866, 36 L. R. A. (N. S.) 875. On the other
hand, dynamite and blasting powder when used in con-
struction work are generally held lienable materials.

Schaghticoke Powder Co. v. Greenwich & J. Ry. Co., 183 N. Y. 306, 76 N. E. 153, 2 L. R. A. (N. S.) 288, 111 Am. St. Rep. 751, 5 Ann. Cas. 443; Hercules Powder Co. v. Knoxville, L. & J. R. Co., 113 Tenn. 382, 83 S. W. 354, 67 L. R. A. 487, 106 Am. St. Rep. 836; Giant Powder Co. v. Oregon Pacific Railroad Co. (C. C.) 42 F. 470, 8 L. R. A. 700.

This court in Avery & Sons v. Woodruff, supra, approved the reasoning in the last-cited case in which it was held that powder was lienable. It will be observed that in New York coal and gasoline are held nonlienable and dynamite and powder lienable. The reason for the distinction seems to be that explosives come directly in contact with the structure upon which the work is being done, while the gasoline is furnished merely as an adjunct to the machinery. If the excavating machines and drills used by the contractor in the instant case had been operated by hand power it could not be argued that the men furnishing such power would not be entitled to a lien for their labor. The gasoline furnished by appellant produced the power that did the work and was consumed in the operation. It was a substitute for hand power. It is argued that if gasoline and oil are lienable, then food and supplies for men and teams of a contractor are lienable. This does not necessarily follow. Gasoline and oil are consumed in the machinery in performing that particular work, while the food for men and teams not only sustains them during the progress of the work, but contributes to their existence thereafter. However, this question is not here. The line must be drawn somewhere, but we are unwilling to draw it in the twilight zone between explosives used to move dirt and rock and fuel used to furnish motive power for machinery that does precisely the same work.

In Johnson v. Starrett, 127 Minn. 138, 149 N. W. 6, L. R. A. 1915B, 708, coal and gasoline for generation of power and lubricants furnished excavating contractors were held lienable under the Minnesota statute, the court saying:

> "From a practical standpoint we think it cannot be justly said, under the plain terms of the statute, that those furnishing the coal, gasoline and dynamite did not 'contribute to the improvement' of defendant's property by 'furnishing material for excavating the same.' Clearly the work of the whirly and motortrucks contributed to the improvement of

defendant's property, and, as the coal and gasoline furnished the motive power for its accomplishment, the contractors would have been entitled to a lien therefor. But it is said that these materials were not furnished to excavate defendant's premises or for them, but, on the contrary, for use in and as a part of the plant and equipment of the contractors for the purpose of creating power and therefore were not lienable. This contention, we think, is too restricted both as to the facts and law. It ignores both the policy and settled construction of the statute and also modern methods employed in performing building contracts. Both the coal and gasoline were materials and both were components of the resulting achievement. Had the excavation and removal of the earth been done by manual labor, the right to a lien therefor would be undoubted, and we cannot differentiate such a case from the one where the same result is reached by other and modern methods. The value of defendant's property was thereby enhanced, and it can make no difference that this was accomplished by use of power obtained from materials furnished by the lien claimants instead of by common labor.''

This court has adopted the view that the lien statute, while in derogation of the common law, should be liberally construed. Avery & Sons v. Woodruff, supra; Waddy Bluegrass Creamery Co. v. Davis-Rankin Building & Manufacturing Co., 103 Ky. 579, 45 S. W. 895, 20 Ky. Law Rep. 259; Grainger & Co. v. Johnson (C. C. A.) 286 F. 833, 33 A. L. R. 315. To hold that the gasoline and oil furnished by appellant were not lienable materials would not comport with the view that the statute should be liberally construed, to which view this court is committed. To hold them lienable is a step short of the position taken in the Hegewald case, supra, where the Hegewald Company was held entitled to a lien for services rendered in repairing machinery.

While county or municipal property devoted to public use will not be sold to satisfy a materialman's lien, one furnishing materials to the contractor may file his lien and have subjected to the payment of his debt money due to the contractor by the municipality. Allen County v. U. S. Fidelity & Guaranty Co., 122 Ky. 825, 93 S. W. 44, 29 Ky. Law Rep. 356. In some states where

the lien statute is not so construed, statutes have been passed making it the duty of public officials in making contracts for public work of any kind to be performed for the state or any subdivision thereof, to require every contractor to execute bond conditioned for the payment of material used and all labor performed in such work. While cases construing bonds under such statutes are not altogether in point in the case of a bond under a lien statute, they are very helpful in ascertaining what materials are covered by the bond, particularly in view of the construction of the lien statute adopted by this court. The object of these statutes is to substitute the required bond for the security which the claimant might otherwise obtain under a mechanic's lien statute. In cases arising under such statutes in which bonds similar to the one here involved have been construed, it has generally been held that gasoline and oil are covered by the bond and come within the terms of the statute. Franzen v. Southern Surety Co., 35 Wyo. 15, 246 P. 30, 46 A. L. R. 496; Overman & Co. v. Maryland Casualty Co., 193 N. C. 86, 136 S. E. 250; and the recent case of State v. Lyle decided by a Missouri Court of Appeals February 13, 1928, rehearing denied March 3, 1928, and certiorari denied April 6, 1928, and reported in 5 S. W. (2d) 453.

Appellee, in support of its contention that the materials furnished by appellant are not covered by the bond, cites the case of Alpena v. Title Guaranty & Surety Co., 168 Mich. 350, 134 N. W. 23, in which a claim for fuel was disallowed under a statutory bond conditioned for the payment of labor performed and material furnished. This case, however, was overruled in Smith v. Oosting, 230 Mich. 1, 203 N. W. 131, the court saying:

"The contract by which defendants undertook the work of building the highway contemplated that the gravel should be transported from the railway cars to the highway. It required power to do this, and the gasoline in question furnished the power. It is true that the gasoline was not visible after the highway was finished, but it was as visible as the labor which was bestowed upon it. It was used directly upon and for the highway and was instrumental in producing the final result. In most jurisdictions powder and dynamite used for blasting have been regarded as 'materials furnished.' The use of gasoline to convey materials with which to build this

highway contributed to and enhanced its value in the same way that powder and dynamite do in blasting for highways. Neither is physically incorporated into the highway, but both are wholly consumed in aid of the work. The gasoline contributed to and enhanced the value of the highway as much as though the gravel had been moved by man power or horse power. The statute contemplates that labor and materials used in constructing, repairing or ornamenting a building, improvement or works shall be protected by the bond. As the gasoline in question materially aided in the construction and building of the highway, and enhanced its value, it should be regarded as 'materials furnished,' within the meaning of the statute.''

In view of our conclusion that appellant's claim is lienable, it is unnecessary to consider whether an action could be maintained on the bond if the claim had been nonlienable.

For the reasons indicated, the judgment is reversed, with directions to overrule the demurrer to the petition as amended.