## Marion Steam Shovel Company v. Union Indemnity Company et al.

(Decided Oct. 23, 1934.)

TRABUE, DOOLAN, HELM & HELM for appellant.

WOODWARD, HAMILTON & HOBSON for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appellees became sureties on the bond of the Pittsburg Foundation Company as a contractor for the construction of a sewer in Louisville. The appellant sold to that company a steam shovel for $37,500. The boom and bucket was special equipment constructed and put upon the machine solely for the use of this contractor on that particular job at a cost of $10,000, was not in general use on steam shovels, had no salable value except as junk material, and thereby was a complete loss. The contractor abandoned the work and left the machine in a deep channel. It had paid $6,000 of the purchase price, and there was due as principal and interest $32,167.64. The appellant repossessed the machine, which was then of a fair, reasonable market value of $15,000. By reason of its depreciation, appellant lost $17,167.04, and incurred an expense of $2,500 in recovering and removing the shovel, so that its total loss was $19,667.04.

The foregoing, together with the allegation that the machine had been furnished upon the faith of the bond, constituted the substance of the petition against the sureties seeking to recover of them the amount stated. The particular provision in the bond executed to the commissioners of sewerage, of Louisville, upon which the appellant's right of recovery was based, is:

"Now, the condition of this obligation is such that if the said principal * * * shall also pay for all labor performed or furnished and for all materials used in the carrying out of said contract, then this obligation shall be void; otherwise it shall remain in full force and virtue."

It was further alleged that, after the abandonment of the contract, the sureties assumed its completion through another contractor, and in that connection agreed with the commissioners of sewerage that they would "pay and discharge all valid claims for labor performed and materials furnished on this work for the Pittsburg Foundation Company prior to its default under said

contract." A demurrer was sustained to the petition as amended, which was followed by its dismissal and this appeal. The sole question involved is whether or not the depreciation in the machinery and the expense of repossessing it are embraced in the phrase "all materials used in the carrying out of said contract," so as to entitle the appellant to recover under the bond.

While liability of the surety in a bond of a contractor engaged on public works does not depend absolutely upon the absence of any power to enforce a mechanic's or materialman's lien upon the public structure, but upon the terms of the bond (Standard Oil Company v. National Surety Company, 234 Ky. 764, 29 S. W. (2d) 29), the classification of things as within or without the contemplation of such bonds has been influenced by the conception that the object of the statute requiring their execution is to substitute the bonds for the security which materialmen and laborers might otherwise obtain under a mechanic's lien statute. Certainly there is an analogy where the issue is definitional and the same interpretation is demanded. Quite naturally some things fall into a shadow zone, and difficulty arises in assigning them either within or without the coverage of the bond. The general rule for classification may be said to be that the clause assuring payment for "materials used" relates to materials or things which have gone into the finished structure and have become a part of it. Accordingly, the weight of authority is that, unless specifically provided, the security afforded by the bond or a mechanic's lien law does not cover the value or use of tools, machinery, or supplies furnished, loaned, or rented for the purposes of facilitating the work where they remain the property of the contractor or another, and have not been consumed in their use nor lost their identity, but remain capable of use in other work or construction. This exclusion also embraces machinery entirely worn out. However, that the discrimination be not too strictly enforced, there is generally regarded as coming within the purview of the obligation material which was consumed, wasted, or destroyed, almost or altogether in the work, even though it was not incorporated in the improvement as a constituent part of it. Of such are oils and gasoline, explosives, and lumber used in scaffolding or forms for concrete. On this, the conclusions of other courts are conflicting, even where it seems the facts were quite similar. 39 C. J. 1385; 40

C. J. 86; 60 C. J. 1167; 18 R. C. L. 918; Carson & Company v. Shelton, 128 Ky. 248, 107 S. W. 793, 32 Ky. Law Rep. 1083, 15 L. R. A. (N. S.) 509; Avery & Sons v. Woodruff & Cahill, 144 Ky. 227, 137 S. W. 1088, 36 L. R. A. (N. S.) 866; Henry Bickel & Company v. National Surety Company, 156 Ky. 695, 161 S. W. 1113; Mid-Continent Petroleum Corporation v. Southern Surety Company, 225 Ky. 501, 9 S. W. (2d) 229, 230; Steele & Lebby v. Flynn-Sullivan Company, 245 Ky. 772, 54 S. W. (2d) 325, 328; Union Indemnity Company v. Penn. Boiler Works, 246 Ky. 473, 55 S .W. (2d) 367; Century Indemnity Company v. Shunk Mfg. Co., 253 Ky. 50, 68 S. W. (2d) 772. These domestic cases in their reasoning and conclusions sustain the foregoing effort to state the general rules comprehensively. The numerous foreign authorities cited in them also have that effect. See particularly Standard Boiler Works v. National Surety Company, 71 Wash. 28, 127 P. 573, 43 L. R. A. (N. S.) 162; Royal Indemnity Company v. Day & Maddock Co., 114 Ohio St. 58, 150 N. E. 426, 44 A. L. R. 374; Clifton v. Norden, 178 Minn. 288, 226 N. W. 940, 67 A. L. R. 1227; George T. Miller Const. Co. v. Standard Oil Company (Ind. Sup.) 185 N. E. 639, 91 A. L. R. 1025.

As to the character of items used in the operations and not actually entering into the structure, though regarded as materials within the obligation of the bond because mutilated or so consumed as to be practically worthless for other undertakings, we quite agree with the statement in Barker, etc., Lumber Company v. Marathon Paper Mills Company, 146 Wis. 12, 23, 130 N. W. 866, 36 L. R. A. (N. S.) 875, that the doctrine must be carefully guarded or it may be carried to extreme and fanciful lengths. Application of this view was thus expressed in Steele & Lebby v. Flynn-Sullivan Company, supra:

"The line must be drawn somewhere, and we think there is no more appropriate, as well as no more certain place to draw it, than at the point of entire consumption of the article in its use in performing the work, and that in all cases where the article is not consumed but preserved for future like use no claim for its use is embraced within the terms of the statutes."

In our several cases we have held that "materials," as used in this and similar bonds or mechanic's lien

statutes, include lumber for concrete forms which was practically consumed, and oil and gasoline used in the machinery, but that the term does not embrace groceries furnished a contractor's boarding house where he boarded his laborers, rental of a hoisting engine or other machinery, or the balance due on a boiler sold to the contractor. It is true that in Fidelity & Deposit Company v. Charles Hegewald Company, 144 Ky. 790, 139 S. W. 975, it was held that the cost of repairs or replacement of worn-out parts of machinery employed by a contractor in sewer construction was covered by its bond of like character to the one now before us. Not only is that case out of line with the weight of authority, but a different conclusion was reached in the recent case of Century Indemnity Company v. Shunk Manufacturing Company, supra, in which this court held that, as applied to machinery rented to a contractor the sum due for its rent, for damages represented by the cost of repair, for the value of parts lost or destroyed while used in the work, or for freight on the rental equipment, was not recoverable of a surety on a contractor's bond with terms of similar import.

Counsel for the appellant recognize the force of our conclusions in respect of other claims under similar bonds. They maintain, however, that depreciation in the value of the steam shovel (represented by calculations which may or may not be sound) corresponds to lumber practically consumed in concrete forms, the value of which was allowed in Avery & Sons v. Woodruff & Cahill, supra, and to replacements of worn-out parts of machinery allowed in Fidelity & Deposit Company v. Charles Hegewald Co., supra. Confidence in their position is asserted because of this statement in Mid-Continent Petroleum Corporation v. Southern Surety Company, supra:

"Until recently a majority of the courts denied liens for materials which, though employed or consumed in the work, became no part of the structure, but now there is a tendency to relax that rigid rule and to allow liens to the extent to which the materials are consumed or depreciated in the work."

They put their trust also in Union Indemnity Company v. Pennsylvania Boiler Works, supra, in which the identical bond was relied upon to recover of these appellees the balance of the purchase price of a boiler sold to the same contractor. The observation respecting the

tendency toward liberal interpretation of these bonds was repeated in substantially the same language. The distinction was drawn between the claim for the purchase price of a boiler and for repairs to machinery necessitated by its use, as was allowed in the Hegewald Case, in these words:

> "The claim here is not for parts of a machine worn out and replaced, or for depreciation resulting from use in carrying out the contract. * * *"

As pointed out above, the Hegewald Case has since then been overruled in effect by the Shunk Manufacturing Company opinion, supra, which was delivered after this case was briefed. The reference to allowances for depreciation in both opinions was but reasoning. It clearly referred to depreciation represented by the practical consumption of such materials as lumber used in concrete forms and the like. The reasoning for the conclusion that the purchase price of the boiler could not be recovered is pertinent, that is, because it was a part of the contractor's plant which, though utilized in the labor of construction, could be removed and used again and again on other projects. We can see no distinction. The steam shovel did not lose its identity. It also was a contribution to the property of the contractor and became a part of his plant. Instead of seeking the balance of the purchase price, this creditor sought what it lost through the extension of credit by repossessing the machine and asking of the sureties that they pay a sum sufficient to make it whole. The difference is only in the method of attempted recoupment.

There could be no difference if the machinery had been entirely worn out on the job; nor because part of it, as alleged, was manufactured for this particular contract and not suitable for others. Tools and equipment are not within the natural and commonly understood meaning of "materials," nor impliedly within the terms of the bond. The contract of indemnity and guaranty presupposed that the contractor would furnish upon his own account the necessary tools and equipment with which to perform the work. One who sells them to a contractor who does not pay for them cannot recover his loss of the sureties on his bond insuring the fulfillment of a particular contract in which they have been used. Claims of this character were disallowed under similar provisions in National Surety Company v. United States, 143 C. C. A. 99, 228 F. 577, L. R. A. 1917A, p.

336; Kansas City v. Youmans, 213 Mo. 151, 112 S. W. 225; Gwynns Falls Quarry Company v. National Surety Company, 148 Md. 221, 128 A. 916; George H. Sampson Company v. Commonwealth, 202 Mass. 326, 88 N. E. 911. See, also, notes, 43 L. R. A. (N. S.) 165, L. R. A. 1915F, p. 951.

The judgment is affirmed.