**UNITED STATES FIDELITY AND GUARANTY COMPANY,**
Appellant,

v.

**Jack L. MILLER, t/d/b as Miller Lumber Company, Appellee.**

Court of Appeals of Kentucky.

March 25, 1977.

E. Preston Young, Louisville, William O. Miller, Maysville, for appellee.

Rocco J. Celebrezze, Louisville, for appellant.

Before HOWARD, LESTER and PARK, JJ.

PARK, Judge.

In this proceeding, the appellee, Jack L. Miller, trading as Miller Lumber Company, seeks to recover on payment bonds executed by the appellant, United States Fidelity and Guaranty Company (U.S.F. & G.) for lumber sold and delivered to the Mattingly Bridge Company, Inc. (Mattingly Bridge). The case was tried in the Jefferson Circuit Court without the intervention of a jury. The circuit court entered judgment in favor of Miller against U.S.F. & G. for the amount claimed. U.S.F. & G. appeals.

Mattingly Bridge entered into two contracts with the Department of Highways for work on the Shawnee Parkway in the City of Louisville. The two contracts are dated April 3 and April 11, 1969. Both contracts contained identical provisions relating to a performance and payment bond. The contracts provided:

"Such bond, when approved by the Department shall be for the use and benefit of the Department, and each person furnishing materials, labor and supplies for use in the performance of this contract."

Attached to the contracts were performance and payment bonds executed by Mattingly Bridge as principal and by U.S.F. & G. as surety.

The bonds provided that the principal and surety were "held and firmly bond unto the DEPARTMENT OF HIGHWAYS in its official capacity as agent of the Commonwealth of Kentucky, hereinafter called the DEPARTMENT, and to each and every person, firm, or corporation who may furnish labor, materials or supplies for use on the project hereinafter identified." The bond was conditioned upon the prompt payment of "persons supplying the principal with labor, supplies and materials in the prosecution of the work provided in the said contract." No issue is raised with respect to the fact that Miller did furnish Mattingly Bridge the lumber claimed in the complaint. The sole question to be decided is whether the lumber constituted materials furnished "for use on the project" and "in the prosecution of the work."

The lumber furnished by Miller to Mattingly Bridge was covered by four invoices. The lumber included in the first two invoices was shipped on March 13 and March 27, 1969. The lumber in question was delivered to Mattingly Bridge at a job site in Sebree in Webster County, Kentucky. The two invoices for the Sebree shipments totaled $13,666.92. On March 5 and March 13, 1970, Miller shipped lumber to Mattingly Bridge at two locations in Louisville. The invoices for the two Louisville shipments totaled $13,511.20.

The Sebree project involved the construction of a bridge over the Green River. Mattingly Bridge was a subcontractor of Nashville Bridge Company, the prime contractor for the project. This project was not bonded by U.S.F. & G. Although a payment bond may have been furnished by Nashville Bridge Company as prime contractor, Mattingly Bridge furnished no payment bond on the Sebree project.

Following completion of the Sebree project, a substantial amount of lumber was brought by truck to Mattingly Bridge's facilities in Louisville. Some of the material consisted of lumber which had never been used. The bulk of the lumber brought back from Sebree had been salvaged and cleaned after being used on that job. It is clear

that some of the lumber shipped by Miller to Mattingly Bridge at Sebree was not salvaged. Miller's brief estimates that "approximately 80% or more" of the lumber shipped to Sebree was brought back to Louisville. Accepting the testimony of a truck driver and the yard foreman for Mattingly Bridge, the material brought from Sebree to Louisville was used and consumed in carrying out Mattingly Bridge's two contracts on the Shawnee Parkway project.

At the time that Miller made the two shipments to Louisville in March 1970, Mattingly Bridge was engaged in projects other than the two contracts on the Shawnee Parkway. According to Mattingly Bridge's yard foreman, all of the lumber from the two Louisville shipments was used and consumed in the construction of the various bridges included in the two Shawnee Parkway contracts. There was other evidence that some of the lumber from the Louisville shipments was actually used on projects other than the two bonded Shawnee Parkway contracts.

In the opinion of the circuit court, two principal questions were presented in the case, namely:

"The first is, whether or not the performance bond of United States Fidelity and Guaranty Company indemnified the use of certain forms and other similar devices which had previously been used at another job, bonded by a different surety, but reused on the instant job for which plaintiff furnished supplies in Jefferson County under Exhibits A., B., C. or D.

"The second question is whether or not material delivered to certain storage sites by the plaintiff, to be used upon a project or job, admittedly covered by the surety, was chargeable against the insurer, although later diverted by the principal, Mattingly, to a new or different purpose than contracted for."

Implicit in the circuit court's statement of the issues is a finding of fact that all of the material brought from Sebree was actually used on the Shawnee Parkway contracts and that a portion of the Louisville shipments was diverted from the Shawnee

Parkway contracts although originally intended for those contracts. These factual findings are supported by substantial evidence, and they are not clearly erroneous. CR 52.01.

The circuit court answered both of its stated questions in favor of Miller against U.S.F. & G. With respect to the Sebree shipments, the circuit court concluded that the surety on a payment bond was liable for material used and consumed on the bonded project although the material had been originally furnished for and used on another project. The circuit court would also hold the surety on a payment bond liable for material furnished for the bonded project, but which was ultimately diverted for use on another project not covered by the bond. This court concludes that there is a basic inconsistency in the circuit court's holdings. Although the circuit court did not err in holding U.S.F. & G. liable for the Louisville shipments, it was error for the circuit court to enter judgment for Miller against U.S.F. & G. on the Sebree shipments.

■ The contracts and payments bonds themselves do not require that the materials actually be used and consumed on the project. The contract and bond are intended to protect persons furnishing the materials "for use" in the performance of the contract or who are furnishing materials "in the prosecution of the work." In considering a similar question under the Miller act, the court in *United States v. Fire Association of Philadelphia,* 260 F.2d 541, 545 (2d Cir. 1958) held that the materialmen need not prove that the material was actually consumed in the project, stating:

"Thus requiring the supplier to trace specific materials after they have left his control may often place upon him an impossible burden of proof even when the items involved were in fact consumed. Moreover, even if appropriate tracing measures could be devised, the courts, in enforcing one remedial policy, should be hesitant to compel an industry to accept what may be artificial and burdensome accounting practices. But these problems

aside, the policy of the Miller Act dictates that an exception ought not to be carved out of the surety's liability for materials not actually consumed. For the statutory bond is of value to materialmen in our credit economy only as its coverage is predictable at the time the contract for the materials is created. Businessmen look to more than the contents of their cash registers in conducting their affairs. If, because the surety's liability is held suspended until the goods are consumed, the bond has little effect on the degree of certainty with which the supplier can expect to receive the purchase price of the materials sold or to be sold under the contract, it little aids the financial position of the persons Congress sought to benefit.

"These same considerations apply with equal vigor to appellant's final assertion—that its liability on the bond does not extend to materials which the contractor innocently or fraudulently diverts from the bonded work to another project. Accordingly, it would be inconsistent with the preceding discussion to enlarge the holdings of past cases which have relieved the surety of his obligation only in circumstances where the supplier, at the time the materials were furnished, had constructive knowledge of the contractor's intended use of them."

See the annotation, 79 A.L.R.2d 843, 847–49. So long as it is reasonably anticipated that the materials would be consumed on the project, this court agrees with the circuit court that "it would be unreasonable and absurd to require the seller to follow the eventual use of materials as a condition precedent to recovery against the surety."

Entirely different factors are presented by the Sebree shipments. The two shipments in March 1969 antedated the execution of the two contracts and payment bonds for the Shawnee Parkway projects in April 1969. It is obvious that the Sebree shipments were not intended for use on the Shawnee Parkway projects and that Miller did not furnish the materials in reliance on any payment bond executed by U.S.F. & G. A portion of the lumber included in the Sebree shipments was actually consumed in the construction of the bridge at Sebree. The great bulk of the material removed from the Sebree project to Louisville was used lumber. There was no evidence of the value of the lumber which was brought from Sebree and used on the Shawnee Parkway projects. Nevertheless, the circuit court allowed Miller to recover the full amount of the two invoices covering the Sebree shipments.

■■■ The rights of a materialman under a payment bond are not limited to the materialmen's rights under the Mechanic's Lien Law. *American Radiator and Standard Sanitary Corp. v. Albany Municipal Housing Commission,* Ky., 441 S.W.2d 433 (1969). Nevertheless, the presence or absence of a right to assert a mechanic's lien can be a guide to the interpretation of a payment bond. *Massachusetts Bonding and Insurance Co. v. C. B. Duff & Co.,* 261 Ky. 255, 87 S.W.2d 363 (1935); *Marion Steam Shovel Company v. Union Indemnity Company,* 255 Ky. 817, 75 S.W.2d 541 (1934). There can be no valid mechanic's lien when material is sold on the general credit of the contractor without any knowledge or intention on the part of the supplier that the material be used on a particular job or project. *Central Contractors Service v. Ohio County Stone Co., Inc.,* Ky., 255 S.W.2d 17 (1953); *Charles H. Conner & Co. v. Mason,* 143 Ky. 635, 137 S.W. 235 (1911).

■■■ The court concludes that the bond executed by U.S.F. & G. was not intended to cover materials furnished to the contractor to enable him to perform another unrelated project not covered by the payment bond. This is particularly true when the materials are furnished prior to the execution of the payment bond. In furnishing the material included in the Sebree shipments, Miller did not rely upon the existence of any contracts for the performance of the Shawnee Parkway projects. The bulk of the material included in the Sebree shipments was actually used on the Sebree Bridge project, but the fact that most of the material was salvaged by Mattingly

Bridge and later consumed in performing the Shawnee Parkway project could not make U.S.F. & G. liable for the original sales price for the material. The lumber shipped to Sebree was not furnished "for use" on the Shawnee Parkway projects nor was it supplied to Mattingly Bridge "in the prosecution" of the work provided for in the contracts on the Shawnee Parkway.

The judgment of the circuit court relating to the Louisville shipments in the amount of $13,511.20 is affirmed; the judgment of the circuit court with respect to the Sebree shipments in the amount of $13,666.92 is reversed and remanded with directions to the circuit court to enter judgment dismissing that portion of Miller's complaint.

All concur.