## J. T. Jackson Lumber Co. v. Union Transfer & Storage Co.

(Decided June 7, 1932.)

(As Modified on Denial of Rehearing Jan. 24, 1933.)

654

OPINION OF THE COURT BY STANLEY, COMMISSIONER
—Affirming.

The appellant, J. T. Jackson Lumber Company, a partnership, had a contract with the board of education of Lexington to construct the Henry Clay High School building. Under subcontract the Huntington Iron Works Company undertook the steel and iron work, and the Union Transfer & Storage Company transported material under contract with the iron works company. This suit was instituted by the lumber company against the school board to recover $1,745.44, balance due under its contract. The board admitted that it owed that sum, but pleaded that certain claims had been asserted against it on account of unpaid material and labor charges and asked that those claimants be made parties to the suit. Thereupon the appellee Union Transfer & Storage Company and others came into the case. The appellee claimed the benefit of the commitments of the appellants to the school board, particularly the obligation contained in this part of the contract:

"Unless otherwise stipulated, the contractor shall provide and pay for all materials, labor, water, tools, equipment, light and power necessary for the execution of the work."

Another provision required the contractor to indemnify and save harmless the board of education from all suits and actions against it and should guarantee the prompt payment of all persons furnishing material or labor to the contractor in the prosecution of the work. It was further provided that the final payment of the retained percentage would not be made until the contractor should deliver to the board a complete release of all liens arising out of the contract, or receipts in full in lieu thereof, and, if required, submit an affidavit that the releases and receipts included all the labor and material for which a lien might be filed. It was claimed by the appellee that the money in the hands of the school board constituted a trust fund for the satisfaction of its claim and other similar ones.

The court construed the contract favorable to appellee's contentions, and rendered judgment upon the pleadings in its favor against the appellants for $801.56, the amount of its claim, and adjudged that it had a lien

upon the money due by the school board, which had been paid into the court pending the litigation. Appellants claim the judgment 'to be erroneous since the appellee was not a party to the contract between the school board and themselves, and that the contract was of a kind that should not be construed as being for its benefit.

That a contract between two parties may inure to the benefit of another, who may maintain an action on it, is an established doctrine in this and most jurisdictions in this country. The right is dependent upon whether the third person is a party to the consideration or the contract was entered into for his benefit or he has some legal or equitable interest in its performance. 13 C. J. 705-709; Matheny v. Chester, 141 Ky. 790, 133 S. W. 754; Morrison v. Payton, 104 S. W. 685, 31 Ky. Law Rep. 992; National Surety Co. v. Daviess County Planing Mill Co., 213 Ky. 670, 281 S. W. 791; Mid-Continent Petroleum Corporation v. Southern Surety Co., 225 Ky. 501, 9 S. W. (2d) 229; Standard Oil Co. v. National Surety Co., 234 Ky. 764, 29 S. W. (2d) 29; Chesapeake & O. Ry. Co. v. Wadworth Electric Mfg. Co., 234 Ky. 645, 29 S. W. (2d) 650.

This court has had recently several cases involving the rights of materialmen under a bond executed by a building contractor to the owner whereby the surety agreed to save the owner harmless from loss by reason of the nonpayment of such claims. As pointed out in Standard Oil Co. v. National Surety Co., supra, we have two distinct lines of decisions in cases of this character. As shown, the dissimilarity arises from the differences in the terms of the particular contracts. It is only a question into which classification the contract before us is to be placed.

In some of the recent cases the obligation sought to be fixed upon the contractor to satisfy materialmen was in the indemnifying bond given the owner. The bond usually is to be regarded as a part of the general contract, and, when the two documents are to be read together, if either contains a provision committing the contractor to the payment of the material or compensation of the laborers, it is construed to have been made for their benefit, and they are given a cause of action thereunder. Here the bond guarantees to the owner that the contractor "shall pay all persons who have

contracts directly with the principal (appellant) for labor or materials." But the contract itself contains a provision that the appellants shall pay for all material and labor. We cannot follow appellant's argument that this case is to be distinguished from others because it is not rested on the bond and the subcontractor was between them and the claimant. Cf. National Surety Co. v. Daviess County Planing Mill Co., supra. It is only a question whether under either or both documents the contractor is liable to those furnishing material. Where liability is measured by the bond, the surety is held only because he is a joint obligor. His liability is once removed from that of his principal.

One who hauls for the contractor material which enters into the construction of a building comes within the purview of the mechanic's and materialmen's lien law (section 2463, Kentucky Statutes), and is as much entitled to the benefits of that law as is one who furnishes the material or labors on the building. Fowler & Guy v. Pompelly, 76 S. W. 173, 25 Ky. Law Rep. 615. By a parity of reasoning, if the contract between the owner and the contractor covers claims of materialmen or the wages of workmen actually engaged in the construction and it was made for their benefit, it must be construed as including the appellee who hauled the material to the building.

In Mid-Continent Petroleum Corporation v. Southern Surety Co., supra, the surety on the contractor's bond had to assume its contract and complete the construction of a sewer for the city of Louisville. The claim asserted was for gasoline furnished to the contractor and used in the operation of machinery. The contract between the commissioners of sewerage and the contractor provided that the latter should do all work and furnish all material necessary or proper to complete the job and that he would "indemnify and save harmless the city and commission from all claims relating to labor and materials furnished for the work." But the terms of the bond went further than the contract and provided that the contractor "shall also pay for all labor performed and furnished and for all material used in the carrying out of said contract." The provision in the contract between the Lexington board of education and its general contractor, as is quoted above, was similar to the provisions of this bond, in that

the contractor obligated himself to pay for all materials, labor, etc., necessary for the execution of the work. The provisions in the sewer construction contract and bond were regarded as a protection against loss to the city, and the bond provision was held to be for the benefit of the laborers and materialmen, and the bonding company liable to them upon default of the contractor. Of course, the contractor was liable, else the surety could not have been held responsible. The conclusion was reached after considering several other cases, which are reviewed in the opinion, and it was also held upon the authority of one of them (National Surety Co. v. Daviess County Planing Mill Co., supra) that those for whose benefit the contract was executed could maintain an action on it.

The terms of the contract involved in this suit were as specific as the bond in the Mid-Continent Petroleum Corporation Case, and just as definitely evidenced a purpose on the part of the contractor to see that all claims arising out of the erection of the school building should be satisfied and paid. We think those terms clearly bring the case within the class of cases in which the contracts were held to inure to the benefit of those who furnished material or labor necessary to the completion of the work. And though the appellee was employed by a subcontractor, upon whom the appellants expected to rely to take care of its own direct obligations (as that to the appellee), there existed an indirect liability upon the appellants by reason of their contract with the school board, which has now become a direct obligation by default of the subcontractor. Their failure to exact security or indemnity from such liability cannot affect the situation.

We may look with interest to the recent publication of the American Law Institute's "Restatement of the Law of Contracts." Upon the principle involved, our opinions are in accord with the statement. In section 133 the law is declared to be that:

"Where performance of a promise in a contract will benefit a person other than the promisee, that person is * * * (a) a *donee beneficiary* * * *; (b) a *creditor beneficiary* if no purpose to make a gift appears from the terms of the promise in view of the accompanying circumstances and performance of the promise will satisfy an actual or supposed

or asserted duty of the promisee to the beneficiary * * *; (c) an *incidental beneficiary* * * *. Such a promise as is described in subsection (1b) is a promise to discharge the promisee's duty."

Under this definition, we regard the appellee as a "creditor beneficiary." And section 139 is:

"It is not essential to the creation of a right in a donee beneficiary or in a creditor beneficiary that he be identified when a contract containing the promise is made."

In section 141 it is said:

"A creditor beneficiary who has an enforceable claim against the promisee can get judgment against either the promisee or the promisor or against each of them on their respective duties to him. Satisfaction in whole or in part of either of these duties, or of judgments thereon, satisfies to that extent the other duty or judgment."

Under the several provisions of the contract, the consideration to be paid for the erection of the building was in effect set apart for the payment of all claims arising out of the undertaking. It was agreed that the school board, for its protection, should withhold the final payment until assured of the satisfaction of those claims. The money was paid into court by it for those whom the court might adjudge entitled to it. The fund constituted a trust fund for that purpose, and it seems to us the court was authorized to distribute it accordingly. 10 R. C. L. 351; 12 R. C. L. 682. The case of Franklin-American Trust Co. v. White Awning Co., 231 Ky. 40, 20 S. W. (2d) 1009, is not opposed to this conclusion, for that was a contest between the assignee of a claim of a subcontractor against the building contractor and a subsequent creditor of the subcontractor who had not acquired a lien on the money in the hands of the creditor for material entering into the construction of the building. The issue was one of priority of equities.

The decision of the trial court being in accord with these conclusions, the judgment is affirmed.