# Charles E. Cannell Co. et al. v. D. & D. Millwork Co.

Nov. 18, 1941.

Wilbur Fields for appellants.

Garland E. Allen for appellee.

OPINION OF THE COURT BY JUDGE CAMMACK—Affirming.

On or about the 24th day of September, 1936, the Commissioners of Sewerage of Louisville awarded a contract to the Charles E. Cannell Company whereby the latter was to construct the Point Sewage Pumping Station. The Company executed a contract bond

to the Commissioners of Sewerage with the Aetna Casualty and Surety Company as surety, which contained the following provision:

> "Now, the condition of this obligation is such, that if the said principal shall well and truly keep and perform all the agreements, terms and conditions of said contract on its part to be kept and performed, and shall also pay for all labor performed or furnished, and for all materials used in the carrying out of said contract, and promptly make all other payments of every kind required of it by or under the terms of said contract, then this obligation shall be void; otherwise it shall remain in full force and virtue."

The Company, hereinafter referred to as the contractor, sublet a part of this contract to the E. H. Pfeiffer Construction Company, hereinafter referred to as the subcontractor, for the construction of the concrete walls of the pumping station. The appellee, D. &. D. Millwork Company, hereinafter referred to as the materialman, sold to the subcontractor lumber used in making the concrete forms, scaffolding, an elevator hoist and a small amount which became a part of the permanent structure. The value of the lumber furnished the subcontractor was $1,022.89.

The materialman brought this action against the Commissioners of Sewerage for the purpose of requiring them to file the original or a certified copy of the contract bond, and against the contractor and his surety and the subcontractor for the sum of $1,022.89, together with interest from the first day of March, 1938, until paid. The subcontractor made no defense to the action and the court peremptorily instructed the jury to return a verdict against him in favor of the materialman. The contractor and his surety demurred to the petition, and answered denying liability and also that the lumber had been used, substantially consumed or destroyed; and pleaded payment to the subcontractor, which latter plea was stricken by the trial court. The case was tried before a jury upon the sole issue as to whether the materialman had supplied materials to the subcontractor that were substantially consumed or destroyed and the court instructed the jury that the law of the case was for the materialman and to find for him in such sum as they believed to represent the fair and

reasonable market value of the materials so consumed or destroyed.

The materialman and his witnesses testified that anywhere from six to fourteen carpenters were continuously sawing, splitting, hammering and prising the lumber about and driving it full of nail holes and that at least 80 per cent of the lumber was entirely consumed, totally destroyed, or otherwise so warped, split and cut up as to be suitable only for kindling wood or a "crow's nest." The contractor and his witnesses testified that only from three to seven carpenters were on the job and, while they were very meticulous in their handling of the lumber, they worked but a fraction of the time; that at least 80 per cent of the lumber was absolutely perfect and was so clean that one handling it would not even get his clothes soiled; that at least 15 truckloads were hauled away and later used again and again on other construction jobs; and that only one small truckload was hauled away as scrap material. With this conflicting testimony before them the jury returned a verdict in favor of the materialman in the sum of $820. From this judgment the contractor and the Surety Company are appealing.

It is insisted that the bond was not for the benefit of the materialman of the subcontractor; that the defendants should have been permitted to rebut the testimony that the subcontractor had not been paid; and that the bond should not have been read to the jury and they should not have been permitted to examine it during deliberations.

Aside from other questions, the language of the material part of the bond in this case is the same as appeared in the bond sued on in the case of Mid-Continent Petroleum Corporation v. Southern Surety Company, 225 Ky. 501, 9 S. W. (2d) 229, 230, wherein we construed the words, "shall also pay for all labor performed or furnished and for all materials used in the carrying out of said contract," as a provision inserted for the benefit of the laborers and materialmen and therefore an additional undertaking on the part of the surety to pay the materialman as well as indemnify the obligee. The bond, therefore, is one for the benefit of third parties, notwithstanding that the primary purpose of the contracting parties was to benefit themselves. However, there is this additional question presented, namely,

whether the materialman of the subcontractor can maintain an action on the bond against the contractor and his surety. This question was decided in the case of J. T. Jackson Lumber Co. v. Union Transfer & Storage Co., 246 Ky. 653, 55 S. W. (2d) 670, 671, wherein it was stated that if either the contract or the bond contained a provision committing the contractor to the payment of the material or compensation of the laborers, it will be construed to have been made for their benefit and they are given a cause of action thereunder. It was said in that case:

> "The terms of the contract involved in this suit were as specific as the bond in the Mid-Continent Petroleum Corporation Case, and just as definitely evidenced a purpose on the part of the contractor to see that all claims arising out of the erection of the school building should be satisfied and paid. We think those terms clearly bring the case within the class of cases in which the contracts were held to inure to the benefit of those who furnished material or labor necessary to the completion of the work. And though the appellee was employed by a subcontractor, upon whom the appellants expected to rely to take care of its own direct obligations (as that to the appellee), there existed an indirect liability upon the appellants by reason of their contract with the school board, which has now become a direct obligation by default of the subcontractor. * * *''

Where a contractor executes a contract or a bond to the effect that he "shall pay for all labor performed or furnished, and for all materials used in the carrying out of said contract," and subsequently sees fit to subcontract a part of the labor or materials in the carrying out of the contract which he is primarily bound to do himself, he is obligated by the very language of his bond or contract to see that such labor and materials are paid for.

It necessarily follows that in order for the contractor and his surety to be relieved of liability to third parties, the contract and the bond must contain no language from which an express covenant for their benefit may be derived; Dayton Lumber & Mfg. Co. v. New Capital Hotel, 222 Ky. 29, 299 S. W. 1063; Owens v. Georgia Life Ins. Co., 165 Ky. 507, 177 S. W. 294; Kentucky Rock Asphalt Co. v. Fidelity & Casualty Co., 6 Cir., 37 F. (2d) 279, 77 A. L. R. 4; or they must stipu-

late clearly that the bond and contract are for the benefit of none other than the obligor and the obligee. Massachusetts Bonding & Ins. Co. v. United States Radiator Corporation, 265 Ky. 661, 97 S. W. (2d) 586.

Another ground urged for reversal is that the trial court permitted the materialman to introduce testimony, the purpose of which was to give the jury the impression that the subcontractor had not been paid, but refused to permit the contractor to refute this implication. It is insisted that, if evidence of payment was not competent, it was reversible error on the part of the court to permit the materialman to create the impression in the minds of the jury that the subcontractor had not been paid and then refuse the contractor the opportunity of refuting the false impression. Appellants cite the case of Eskind v. Southern Trust Company, 233 Ky. 435, 25 S. W. (2d) 1018, 1019, wherein it was said:

"Testimony, which would be clearly irrelevant or incompetent if offered by one party in the first instance, may become very pertinent in rebuttal or explanation of evidence offered by the adversary. * * *"

Upon examination of that case it will be found that the point in controversy was whether or not the parties had agreed to pay certain rates and interest and the trial court permitted the testimony of one party tending to show that an agreement had been reached and then refused to permit the adverse party to deny or refute this testimony. In the present case, the question for the jury to decide had no connection whatever with the fact as to whether or not payment had been made. The record shows that the first testimony offered in regard to payment was all properly withdrawn from the jury's consideration. In the second instance it entered the case in response to questions by the trial court as to whom the materials belonged after the work had been completed. The answers were not directly responsive and the jury might have reasonably inferred that the subcontractor had not been paid. Even so, since we have decided that the contractor and his surety are liable to the materialman by the language of the bond, it is immaterial whether the jury considered the question or not. If they had based their finding upon the question of payment it seems they would have found in favor of the materialman for his entire claim as the evidence of

payment, such as it was, inferred, or tended to show, that he had not been paid at all. It appears to us that the jury considered only the question submitted under the instructions and returned a verdict accordingly.

Nor was it reversible error for the trial court to permit the jury to examine the bond during deliberations. We have already noted that the court instructed the jury that the law was for the plaintiff and the defendant's rights could not have been prejudiced as the jury was bound to follow the court's instructions. As said in the case of Davis v. Pendennis Club, 230 Ky. 465, 19 S. W. (2d) 1078, while it may appear that the trial court erroneously permitted the jury to have in its room papers not properly to be used by it in that way, such action will not constitute reversible error unless the rights of a party have been so prejudiced as to call for a correction by us. The defendant's rights were not prejudiced by the members of the jury having the bond before them during deliberations.

Judgment affirmed.