CASE 10.—ACTIONS BY THE COMMONWEALTH FOR THE USE OF M. C. VANDIVER AND OTHERS, W. C. WULFF & CO., AND ANOTHER, JOSEPH ELIAS AND OTHERS, AHRENS & OTT MANUFACTURING COMPANY AND THE CARROLLTON BRICK COMPANY AGAINST THE FEDERAL UNION SURETY COMPANY.—June 17, 1910.

## Federal Union Surety Co. v. Commonwealth, for use of Vandiver, &c.

Appeal from Franklin Circuit Court.

R. L. STOUT, Circuit Judge.

Judgment for the use of plaintiff in each case, and defendant appeals.—Affirmed.

1.  States—Public Buildings—Contract—Bonds—Subcontractors. —Under Laws 1904, c. 2, authorizing the sinking fund commissioners to contract for the erection of a state capitol, and requiring that every contractor for work or material to be furnished under the act shall execute to the board a bond with surety for the faithful performance of his contract, the board had power to exact from the general contractor a surety bond for the benefit of subcontractors and materialmen, providing that, before final payment, the contractor shall furnish satisfactory evidence that he has paid for all

materials used in the construction of the work, and satisfied all claims of laborers and subcontractors doing work thereon, notwithstanding a provision in the act that subcontractors shall in no case be recognized by the board, but that the responsibility shall continue in the principals and their sureties.

2. States—Public Buildings—Construction— Bond.—A provision in a general contractor's bond for the construction of a state capitol that, before final payment, the contractor should furnish satisfactory evidence that he had paid for all materials used in the construction of the work, and would satisfy the claims of all laborers and subcontractors doing work thereon, required not only that the general contractor pay the claims of laborers and subcontractors doing work on the capitol, but also furnish satsifactory evidence to the sinking fund commissioners that he had paid for all materials used in the construction of the work.

3. States—Capitol Building—Bonds—Laborers and Materialmen —Sinking Fund Commissioners—Authority.—The benefit which the board of sinking fund commissioners and the commonwealth derived from a provision in the bond of a general contractor for the construction of a state capitol, requiring that he pay all claims for labor and materials, and the liability of the funds in the hands of the board to be subjected to liens by subcontractors, laborers, and materialmen, were sufficient to authorize the board to make such contract and bond for the benefit of laborers and materialmen.

4. States — Public Buildings — Contractor's Bond — Change of Contract—Release of Surety.— Where a contract for the construction of a state capitol and a bond binding the surety to pay claims of laborers and materialmen were deposited in the office of the Auditor of Public Accounts, and within a short time after execution of the contract and bond the subcontractors executed their contracts with the general contractor on the faith of the bond, alleged changes or alterations in the building and in the time and method of payment, made long after such subcontracts were executed, did not relieve the general contractor's paid surety from liability to such subcontractors, whose rights became fixed on the execution of the contract.

HAZELRIGG & HAZELRIGG and SAMUEL DOWDEN for appellant.

H. V. McCHESNEY, McQUOWN & BECKHAM and BROWN & NUCHOLS for appellees.

OPINION OF THE COURT BY COMMISSIONER CLAY—
Affirming.

The first five cases set out above were originally
instituted in the Franklin circuit court as separate
suits. Thereafter they were consolidated and heard
together, and one judgment entered. The case of
Federal Union Surety Company v. Commonwealth,
for Use of Carrollton Brick Company, was not con-
solidated with the other cases. As the questions in-
volved in the latter case are the same as those in-
volved in the other five cases, we have deemed it best
to consider all the cases together and discuss all the
questions raised in one opinion.

On February 6, 1904, the General Assembly of the
commonwealth of Kentucky passed an act entitled
"An act for the erection and completion of the cap-
itol, and other necessary buildings at the seat of
government." Laws 1904, c. 2. By this act the com-
missioners of the sinking fund of the state of Ken-
tucky were authorized as a board to carry out the
provisions of the act and to erect the capitol build-
ings. To that end, the board was authorized and
empowered to adopt plans and specifications for the
construction and completion of the capitol buildings
at Frankfort as it might deem best and most suitable
for the accommodation of the General Assembly and
the state officials and the departments thereof, hav-
ing due regard for the safety and preservation of
the state records. The board was given authority to
change the plans as the necessity might arise during
the progress of the work. After adopting plans and
specifications, the board was directed to advertise for
sealed proposals for bidders for said work, or any
part thereof; and the act provided that the work

should be awarded to the lowest and best bidder, due regard being had to the resposibility of the bidder. Among the provisions of the act were the following: "Subcontractors shall in no case be recognized by the board, the responsibility to continue in the principals and their sureties.    *    *    *    Every contractor for work or material to be furnished under this act, shall execute to the board, a bond, conditioned for the faithful performance of his contract, with surety to be approved by said board." It was further provided in the act that the total expenditure for all purposes under said act should not exceed $1,000,000. Section 7 of the act is as follows: "All original and supplemental contracts made by the board shall be in writing and signed by the party or parties, in duplicate, and one of the originals deposited in the office of the Auditor of Public Accounts, as a public record therein, and properly authenticated copies thereof shall be evidence in all courts and other places. And the Franklin circuit court is given jurisdiction of all matters and issues which may arise under the provisions of this act." On August 10, 1905, the board of sinking fund commissioners, in pursuance of the power conferred upon it by the act of 1904, entered into a written contract with the General Supply & Construction Company, as general contractors, by the terms of which the latter agreed to erect the capitol building in accordance with the plans and specifications prepared by the architect selected by the board. The provisions of this contract that are material on this appeal are as follows:

"Article IV, a. Said contractor agrees to protect and save harmless the owner from any loss, cost, or damage to it on account of any damage or injury

96 KENTUCKY REPORTS. [Vol. 139.

to third persons, or to property, occasioned ·by the act of negligence of said contractor, his servants, agents, employes or any subcontractor; and said contractor further agrees to keep said real estate· free of all mechanic's liens, and in the event of suits against the owner on account of such act or acts of negligence, or to enforce any lien, the contractor, upon notice by the owner, will appear and defend any suit or suits and hold the owner clear of cost, loss or expense therein; and before final payment is made the contractor shall furnish satisfactory evidence that he has paid for all materials used in the construction of said work, and satisfy the claims of all laborers and subcontractors doing work thereon.''

"Article VI. The contractor shall complete the several portions and the whole of the work embraced and comprehended in this contract and agreement within two years from this date; and, should said contractor fail so to do, it is agreed by and between the owner and said contractor that the measure of liquidated damages forfeited by the contractor to the owner aforesaid shall be two hundred dollars ($200.00) per day for each day in excess of said two years that said contract remains uncompleted, and the time of two years in which this contract is to be completed constitutes a part of the consideration therefor.''

"Article IX. It is hereby mutually agreed between the parties hereto that the sum to be paid by the owner to the contractor for said work and materials shall be eight hundred and eighty thousand ($880,000.00) dollars, subject to the additions and deductions as hereinbefore provided, and that such sum shall be paid by the owner to the contractor in current funds, and only upon the certificate of the architect, as follows:

"Certificates to be issued upon the first Monday of each month, throughout the progress of the work, for an amount equal to the value of the work, and materials delivered in place in the building during the preceding month, less ten (10) per cent. of said value, which shall be retained until date of final payment.

"The final payment shall be made within thirty (30) days after the completion of the work in this contract, and all payments shall be due when certificates for the same are issued.

"If at any time there shall be evidence of any lien or claim under which, if established, the owner of the said premises might become liable, and which is chargeable to the contractor, the owner shall have the right to retain out of any payment then due, or thereafter to become due, an amount sufficient to completely indemnify it against such lien or claim. Should there prove to be any such claim after all payments are made, the contractor shall refund to the owner all moneys that the latter may be compelled to pay in discharging any lien on said premises made obligatory in consequence of the contractor's default."

Upon the same day that the above contract was entered into the General Supply & Construction Company and the Federal Union Surety Company, as its surety, executed and delivered to the commonwealth of Kentucky the following bond:

"Know all men by these presents, that we, the General Supply and Construction Company, a corporation organized and existing under the laws of the state of New York, as principal, and the Federal Union Surety Company, a corporation organized and

98          KENTUCKY REPORTS.      [Vol. 139.

Fed. Union Surety Co. v. Commonwealth, for use of Vandiver, &c.

existing under the laws of the state of Indiana, and having its principal office in the city of Indianapolis, Indiana, as surety, are held and firmly bound unto the commonwealth of Kentucky in the sum of two hundred and twenty-five thousand dollars ($225,000.00), lawful money of the United States, for the payment of which well and truly to be made to the commonwealth of Kentucky, we bind ourselves, our successors and assigns, jointly and severally, firmly by these presents.

"Sealed with our seals and dated this fourteenth day of August, A. D. 1905.

"The conditions of this obligation is such: That whereas the said the General Supply & Construction Company has entered into a certain written contract, hereto attached, with the board of sinking fund commissioners acting for and in behalf of the commonwealth of Kentucky, bearing date the tenth (10th) day of August, A. D. 1905, for the construction of the capitol building at Frankfort, Kentucky.

"Now, if the said the General Supply and Construction Company shall well and truly fulfill all the covenants and conditions of said contract, and shall perform all the undertakings therein stipulated by it, to be performed, and shall well and truly comply with and fulfill the conditions of, and perform all of the work and furnish all the material and labor required by any and all changes in or additions to, or omissions from said contract which may hereafter be made, and shall perform all the undertakings stipulated by it to be performed in any and all such changes in or additions thereto, notices thereof to the said surety being hereby waived, and shall promptly make payment to all persons supplying labor or materials in the prosecution of the work, contemplated by said

contract, then this obligation to be void, otherwise to remain in full force and virtue.

"In testimony whereof, the General Supply and Construction Company, as principal, and the Federal Union Surety Company, as surety, have hereunto subscribed their hands and affixed their seals this fourteenth day of August, A. D. 1905. The General Supply and Construction Company, by R. P. Taylor, president. Federal Union Surety Company, by Robert M. Nugent, Res. Vice President. Attest: May E. McCabe, Res. Asst. Secretary."

About 10 months later the board of sinking fund commissioners deemed it desirable to make certain changes in the capitol building. It was decided that the interior structural and ornamental work should be changed from stone to marble, and that the dome of the building should be changed from copper to terra cotta. For the purpose of carrying out these changes, the board petitioned the General Assembly for an increase in the appropriation. On March 21, 1906, the General Assembly passed an act (Laws 1906, c. 89) entitled "An act to appropriate the additional sum of two hundred and fifty thousand dollars for the erection and completion of the capitol and other state buildings at the seat of government now under contract and course of construction," and appropriated the sum of $250,000 to pay for the building as altered and changed. On June 18, 1906, the board of sinking fund commissioners entered into a new contract with the General Supply and Construction Company, in which the desired changes and additions were provided for at an increased cost of $219,600. In this new contract the method of payment adopted was as follows: "Certificates shall be issued upon the first Monday of each month through-

cut the progress of the work for an amount equal to 90 per cent. of the value of the work and materials delivered and put in place in the building during the preceding month, plus 50 per cent of the value of material delivered at the building site. The 10 per cent. retained shall be paid within 30 days after the completion and acceptance of the work included in this contract, and all payments shall be due when certificates for the same are issued.''

Appellee M. C. Vandiver, by contract with the general contractor, furnished the plumbing for the capitol building. Appellee W. C. Wulff & Co., under contract with the general contractor, furnished the roofing. Appellee Joseph Elias, under contract with the general contractor, furnished the glass. Appellee Grainger. & Co., under contract with the general contractor, supplied the structural steel, cast iron and ornamental iron. Appellee J. L. Mott Iron Works, under contract with M. C. Vandiver, furnished the plumbing. Appellee Carrollton Brick Company, under contract with the general contractor, furnished the brick. These several actions were filed by the commonwealth of Kentucky for the use and benefit of the foregoing parties against appellant Federal Union Surety Company and the General Supply & Construction Company to recover on the bond which they executed to the commonwealth of Kentucky. The provisions of the bond whereby appellant agreed that the General Supply & Construction Company would promptly make payment to all persons supplying labor and materials in the prosecution of the work were set forth in the respective petitions, and it was charged that it was the intention of the parties by the aforesaid provisions to secure the appellees in the payment of their respective claims. Appel-

lant's demurrers to the various petitions were over-
ruled.  Thereupon it answered in five paragraphs.
Paragraph 1 admits the execution of the bond sued
on and the contract covered thereby, but avers that
appellant was released from all liability under its
bond by the wholesale and radical alterations and
changes made in the terms of the contract by the
obligee in the bond, which alterations and changes
were made without the knowledge  and consent of
appellant and before appellees accepted or attempted
to accept the benefit of the bond sued on; that these
alterations  and changes  completely changed  the
character of the building called for by the contract
covered by the bond, and were of so radical and costly
a nature that it required a special act of the Legisla-
ture in order to secure an additional sum of $250,000
to pay for the same.  In its second paragraph,
appellant pleaded  that it .was released  from
all  liability  under  its  bond by  the  acts  of
the  obligee  in  paying  during  the  progress
of  the  rest  of  the  work  to  the  general  con-
tractor  the  greater  part  of  the  retention  fund
which the contract provided should be held by the
obligee until 30 days after the completion of the work,
which payments, it is averred, were made without the
knowledge and consent of appellant, and before ap-
pellees accepted or attempted to accept the benefit of
the bond sued on.  Paragraph 3 contains the defense
that the bond in question was executed pursuant to
the provisions of the act of February 6, 1904, and that
it was neither the intention of the board of sinking
fund commissioners to require, nor had  they any
authority to require, a bond for the benefit of sub-
contractors, including appellees, and that the  bond
did not inure to their benefit.  In paragraph 4, appel-

lant avers that it was released from all liability under
the bond in question by the act of the obligee in ex-
tending the time for the completion of the work cov-
ered by the bond without the knowledge and consent
of appellant, and before appellees accepted or at-
tempted to accept the benefit of the bond. In para-
graph 5, appellant defended on the ground that it
was released from all liability by the acts of the
obligee in changing the method and time of paying
the contract price to the contractor, which changes
were made without the knowledge and consent of ap-
pellant, and before appellees accepted or attempted
to accept the benefit of the bond sued on.

It appears that at the time of the institution of
these several actions the board of sinking fund com-
missioners had in its hands a balance of about $78,000.
By order of court this sum was distributed among the
several claimants. Upon final hearing, judgment was
rendered in favor of appellee M. C. Vandiver for the
sum of $1,713.54, with interest. Judgment was ren-
dered in favor of appellee W. C. Wulff & Company
for $2,214.30 and interest. Judgment was rendered
in favor of appellee Joseph Elias for $2,644.81 and
interest. Judgment was rendered in favor of
appellee Grainger & Co. for $4,275.53, and
interest. No judgment against appellant was ren-
dered in favor of J. L. Mott Iron Works, but the
judgment provided that out of the amount adjudged
in favor of M. C. Vandiver, the claim of J. L. Mott
Iron Works for $1,380.87 and interest should be paid.
A similar judgment was given in favor of the Ahrens
& Ott Manufacturing Company for $1,189.41 and in-
terest, payable out of the judgment in favor of M.
C. Vandiver. Judgment was rendered in favor of
appellee Carrollton Brick Company for the sum of

$3,772.61, with interest, subject to a credit of $200. Upon this appeal no question of the correctness of the foregoing amounts is made. The only questions raised are questions of law, and these we shall proceed to discuss.

The first question we shall consider is: Was the bond in question authorized by the act of February 6, 1904? It is true the act does not contain any provision specifically directing or authorizing the board of sinking fund commissioners to incorporate either in the contract or bond a provision to the effect that the general contractor would pay the laborers and materialmen. The board of sinking fund commissioners, however, was given authority to contract for the erection of the capitol. Having been given authority to make such contract, it necessarily had the right to insert in the same any reasonable covenants which the members of the board might in their wisdom deem necessary or proper in order to secure the erection of the capitol upon the best terms possible. Indeed, it was their duty to do what ordinarily prudent men would do in attending to their own business of a similar nature. If, then, the members of the board, in the exercise of the discretion conferred upon them, concluded that the work would be prosecuted with more satisfaction and would be better done by securing subcontractors, they were certainly authorized to insert in the contract or bond provisions necessary to attain the end desired. Indeed, the provision in regard to the payment of laborers and materialmen was a wise one. That subcontractors, knowing they were secure, would do better work and furnish better material than if they felt uneasy about their pay, cannot be doubted; and the credit which the contractor would thus gain by the security would

enable him to prosecute the work more rapidly and with greater hope of profit. The provision in the act to the effect that ''subcontractors shall in no case be recognized by the board, the responsibility to. continue in the principals and their sureties,'' did not prohibit the board from providing security for subcontractors. The purpose of this provision was to require the board to place upon the principals and their sureties the entire responsibility. In making provision for the benefit of the laborers and materialmen, the board simply placed upon the principal and his surety the responsibility which the act required. We therefore conclude that the board was fully authorized by the act of 1904 to insert in the contract made with the general contractor a covenant on his part to pay the laborers and materialmen. Baker v. Bryan, 64 Iowa, 561, 21 N. W. 83.

The act of 1904 provides that ''every contractor for work or material to be furnished under this act, shall execute to the board a bond, conditioned for the faithful performance of his contract, with surety to be approved by the board.'' By this provision, explicit authority is given to require of every contractor for work or material to be furnished a bond conditioned for the faithful performance of his contract. Having first given to the board authority to contract, and necessarily the power to fix the terms and conditions of the contract, and the board, by virtue of this power, having incorporated a covenant for the benefit of laborers and materialmen, it follows that the board was then authorized to require of the general contractor a bond with surety, approved by the board, for the faithful performance of the contract so made. That being true, we are of opinion that the board was fully authorized to insert in the

bond the provision therein contained for the benefit
of laborers and materialmen.  The provision con-
tained in the contract is as follows:"* * * And be-
fore final payment is made, the contractor shall fur-
nish satisfactory evidence that he has paid for all
materials used in the construction of said work, and
satisfy the claims of all laborers and subcontractors
doing work thereon."  This language is plain, clear,
and unambiguous.  The general contractor thereby
covenanted not only to satisfy—that is, to pay—the
claims of all laborers and subcontractors doing work
thereon, but to furnish satisfactory evidence that he
had paid for all materials used in the construction of
said work. If this is not the meaning of the provision
referred to, then we are at a loss to know what lan-
guage could have been employed for the purpose of
expressing the intention of the parties. In preparing
the bond which the statute required, the board saw to
it that the bond provided, not only that the general
contractor should fulfill all the covenants and con-
ditions of the contract and should perform all of the
undertakings therein stipulated, but also required a
specific provision in the bond with reference to pay-
ing all persons supplying labor or materials in the
prosecution of the work.  By incorporating this pro-
vision in the bond, the board left nothing for interpre-
tation.  All doubt as to appellant's undertaking was
thereby removed.  When appellant executed the bond,
it knew the exact liability which it had incurred.
When we consider the terms of the contract and bond
and the evident care taken by the contracting parties
with reference to the provision in favor of the labor-
ers and materialmen, we have no doubt that it was the
intention of the contracting parties to insert the pro-
vision in question both for the benefit of the common-

wealth and the benefit of the laborers and material-men. By securing the. laborers and materialmen in the payment of their claims, the board also procured protection and advantages for the commonwealth. This latter fact does not affect the rights conferred by the bond upon the laborers and materialmen.

But it is insisted that the board was under no legal duty to incorporate in the bond the provision for the benefit of the laborers and materialmen, and that, therefore, the latter have no right of action on the bond. We conclude, however, that the benefit which the board and the commonwealth derived from the provision in question, and the liability of the fund in the hands of the board to be subjected to liens by the subcontractors, were sufficient to authorize the board to make the contract and bond in question for the benefit of the laborers and materialmen. Morrison v. Payton, 104 S. W. 685, 31 Ky. Law Rep. 992. Being of the opinion that the board was authorized to take the bond, and to insert therein a provision for the benefit of appellees, we have no doubt of the right of the latter to bring this action to recover on the bond in question.

The only.other question which we deem it necessary to consider· is whether or not the changes in the building, or in the time or method of payment, or in the failure of the board to retain the balance of the funds in its hands required by the contract, released appellant from its liability on the bond in' question, so far as appellees are concerned. Without determining whether the bond covered the changes referred to, we shall proceed to a discussion of the question whether or not the act of the board in making such changes affected the rights of the appellees. It may be con-

ceded that there is considerable authority to the effect that radical changes in, or additions to, a building, or material changes in the method or time of payment, not contemplated by the contract, will release the surety from all liability on his bond so far as the owner of the building is concerned. But the question we have here affects only the rights of appellees. It appears from the record that the contract and bond were executed on August 14, 1905. The contract and bond were public records. They were required to be deposited in the office of the Auditor of Public Accounts. Within a short time after the execution of the contract and bond, all the appellees in this case, who were given judgment against the appellant, entered into contracts with the general contractor. These contracts were entered into upon the faith of the bond in question. None of the alleged changes or alterations in the building or in the time or method of payment were made until long after these contracts between appellees and the general contractor had been executed. Upon the making of these contracts, appellees became bound to furnish the materials provided for in the same, and could have been forced to comply with their undertaking and to furnish such materials regardless of any changes that might be made, either in the building or in the contract itself. Their rights against the surety company also accrued at the time they made their contracts with the general contractor. By entering into the contracts, appellees indicated their acceptance of the bond which was executed for their benefit and protection. Their rights, then, became fixed, and no change thereafter made by the board of sinking fund commissioners, either in the building or in the method

or time of paying the contract price, could in any way affect the rights of appellees. United States Fidelity & Guaranty Co. v. American Blower Co., 41 Ind. App. 620, 84 N. E. 555; Schwickert v. Lemke, 40 Minn. 27, 41 N. W. 302; Dewey v. State ex rel. McCullom, 91 Ind. 173; Conn v. State ex rel. Stutsman, 125 Ind. 514, 25 N. E. 443; Doll v. Crume, 41 Neb. 655, 59 N. W. 806; City of Duluth v. Heney, 43 Minn. 155, 45 N. W. 7; Kaufmann v. Cooper, 46 Neb. 644, 65 N. W. 796; Pingrey's Suretyship, section 112.

It is true that in a majority of the above cases there was a statute securing to laborers and materialmen protection in the bonds required to be taken. This fact, however, simply furnished an additional reason for holding that the rights of laborers and materialmen could not be affected by any act of the owner of the building in making changes in the terms of the contract or in the building itself. In our opinion there is every reason why the same rule should be adhered to in the case before us. Being authorized to require a bond for the faithful performance of the contract by the contractor, and being authorized to insert in the contract any provision reasonably calculated to secure the best building at the most reasonable price, and having, under this authority, inserted the covenant for the benefit of appellees, we conclude that the rights of the latter were just as firmly fixed by the contract and bond as if the statute had directed that the contract and bond should contain the provision relied upon. After that time, the board was without authority to do any act that would release appellant so far as appellees are concerned.

In conclusion, we deem it proper to say that counsel for appellant have cited many authorities sustain-

ing their several contentions raised upon this appeal. It cannot be doubted that at one time the courts were so inclined to release sureties from all liability that the surety became known as the favorite of the law. This was probably due to the fact that in the early days the surety entered into contracts of suretyship merely for the purpose of accommodating another and received no compensation therefor. Such is not the case today, however. Suretyship has become a business. Both private individuals and corporations furnish bonds for a consideration. Such bonds are contracts—nothing more nor less, though usually attended by more formality in their execution than are other contracts. Where such contracts are entered into, and the language employed is so clear that the surety cannot fail to know and appreciate the scope of his liability, it should be the tendency of the courts to enforce the contracts, rather than to seek for reasons for relieving the surety of liability.

Judgment affirmed.