## DAVIS v ARNETT

Ohio Appeals, 2nd Dist, Franklin Co

No 2664. Decided Dec 7, 1936

Carl H. Valentine, Columbus, and D. A. Peiros, Columbus, for plaintiff-appellant.

Horace S. Kerr, Columbus, for defendant-appellee.

## OPINION

By HORNBECK, J.

This cause was presented in this court as an appeal on questions of law. The judgment in the trial court was for the defendant. The action was instituted by Davis against certain defendants other than Arnett for personal judgment on a note in the principal sum of $11,500.00 and to foreclose a mortgage on approximately eighteen acres of land, securing the note. Soon after the institution of the action W. L Arnett was made a party defendant and in an amendment to the petition it was averred he was liable to the plaintiff on an assumption of the mortgage indebtedness set up in the second cause of action in the original petition. By agreement this amendment was tested as upon general demurrer, which the court sustained and Arnett was dismissed as a party defendant. From this action error was prosecuted to this court, where the judgment of the trial court was affirmed. Sometime thereafter the plaintiff filed another petition in this case, designated as an amended petition, in which there is set up the averment that Arnett did, for a valuable consideration in writing, assume and agree to pay the indebtedness owing by Russell Vigor and Walter S. Vigor, the makers of the note; that Arnett entered into a written trust agreement at Columbus, Ohio, the terms of which are set out and that in that agreement the assumption clause was carried. Defendant Arnett moved to strike this amended petition from the files. This motion was overruled, to which exceptions were noted. Thereafter, Arnett answered and later filed an amended answer, consisting of nine defenses. The cause came on for hearing on the issues drawn and the court found for Arnett and entered judgment in accordance with the finding.

The real estate mortgaged was sold prior to a determination of the issue between Davis and Arnett, the sale price being the sum of $6400.00, leaving a deficiency on the amount due Davis on his note in the sum of $11,839.41.

It is urged by counsel for Arnett that the cause of action of the plaintiff is res adjudicata, in that it was finally determined by the Court of Appeals, where the judgment of the trial court was affirmed and cause remanded. This position is not well taken, for the reason that in the amended petition which went to the Court of Appeals, no cause of action was stated, whereas in the amended petition filed after the cause was remanded, a good cause of action was set forth. **Moore v Dunn, 41 Oh St 62.**

It is probable that the motion of Arnett to strike the amended petition of Davis from the files should have been sustained. The judgment of the trial court which went to the Court of Appeals and was affirmed was a dismissal of Arnett as a party defendant. The effect of this entry was to conclude the case. The correct procedure for Davis to have followed when he instituted his second action would have been to have started it anew. However, summons was issued to Arnett on the second amended petition, jurisdiction was taken and the procedure adopted was in any event but an irregularity which was not prejudicial to Arnett.

The principal question presented must be determined from certain written instruments and the testimony of Davis in the trial court.

The written instruments are: A trust agreement, plaintiff's Exhibit F, of date September 29, 1928, the parties to which were Russell B. Vigor, Walter S. Vigor, owners of the land described in the amended petition, Milton L. Hughes, W. L. Arnett, agents, M. J. Killetts and Company, and The City National Bank of Commerce of Columbus, Ohio, the trustee; another trust agreement, plaintiff's Exhibit E, executed contemporaneously with Exhibit F, to which the plaintiff, Bert W. Davis, and The City National Bank of Commerce, trustee, were parties. Plaintiff's Exhibit G, executed of date May 1, 1929, an assignment of Milton L. Hughes to W. L. Arnett of all his right, title and interest under the agreement, plaintiff's Exhibit F; plaintiff's agreement H, of date June 5, 1929, to which defendant Arnett was a first party, Killetts & Company and Walter S. Vigor,

second parties, Russell B. Vigor and Walter S. Vigor, third parties, which is a modification of the agreement, plaintiff's Exhibit F; the mortgage, plaintiff's Exhibit C, of date December 9, 1926, in which the Vigors were the mortgagors and The Home Real Estate & Building Company, the mortgagee, the note secured being for the sum of $11,500.00 due five years after date. Thereafter, The Home Real Estate & Building Company assigned its interest in the mortgage to L. D. Brown and later he assigned his interest in said mortgage to the plaintiff, Bert W. Davis.

It is evident, from a reading of one of the covenants of the mortgage, plaintiff's Exhibit C, that in 1926, when it was executed, the Vigors, owners of the real estate described had in mind a purpose to lay it out into an addition made up of platted city lots.

The instrument provides:

"The mortgagee covenant and agree with the mortgagors. that the land herein described may be platted into a subdivision by the mortgagors; that the lots thereof may be sold and that when there is paid upon the indebtedness secured by this mortgage, 125% of the proportionate amount of indebtedness resting upon any one lot, the same will be released from the lien and operation of this mortgagee."

The trust agreement, Exhibit F, set up a full and comprehensive plan of subdividing, selling, deeding lots sold, releasing mortgages on lots by the mortgagee and division of the proceeds of the sale of the lots and the respective duties, rights and obligations of the parties.

This agreement provided, heading 1. for execution and delivery of a deed in fee simple to the real estate described therein by the owners, the Vigors, to the trustee in accordance with its terms and conditions and for the uses and purposes of the trust as therein set out. The amount of the mortgage is set forth, together with certain sums that Arnett, the Vigors and Killetts had advanced and a further sum which Arnett would advance to pay for the costs incidental to the subdivision of said property and to cover sales promotion expenses. Hughes and Arnett, the agents were to take over the active promotion of sales of the lots in the addition laid out, known as Rosemary Gardens Addition, consisting of sixty-seven lots with a fixed total sales price of not less than $63,405.00. Hays

thereafter assigned his interest in the agreement to Arnett.

Heading No. 2 of the trust agreement sets forth the language out of which the controversy between the parties in this case arose, as follows:

"2. The above described property is conveyed to the trustee subject to a mortgage indebtedness of approximately $11,500.00 and the agents herein hereby assume and agree to pay said mortgage indebtedness. It is expressly understood that the trustee does not assume nor agree to pay said mortgage except as the same may be paid by the distribution of the proceeds of sales, if, as and when distributions may be made by the trustee as herein provided."

From the purchase money derived from the sale of the lots it was provided that the trustee should, on or before the 15th day of each month, disburse the same in the following order:

First: To the trustee 5% of all money by it collected, including down payments and such further sum which it may have been obligated in the execution of its duties or in the protection or preservation of the trust property, in accordance with the terms of the agreement.

Second: All legal taxes and assessments due and payable after the date of the agreement.

Third: To the agents, Arnett and Hughes, 15% of the gross selling price of each lot to cover sales commissions.

Fourth: Of the balance of the moneys received by it from time to time (a) to W. L. Arnett 20% of the net receipts from all sales collected by the trustees until the full amount of his advances as theretofore set out in the agreement and including any amount hereinafter to be advanced by him to apply on sales expenses. Said 20% to continue until the full amount of any advances made by them, together with interest at 6%, shall have been fully paid.

(b) Twenty-five (25%) per cent. of the net receipts from all sales collected by the trustee shall be paid pro rata in proportion to the amounts advanced by them, to Russell B. Vigor, Walter S. Vigor and M. J. Killits, until the full amount of their respective indebtedness, together with interest thereon at the rate of six (6%) per cent per annum, payable semi-annually, shall have been fully paid.

(c) Thirty-five (35%) per cent. of the

net receipts from all sales collected by the trustee to be applied on the mortgage indebtedness in the sum of $11,500.00 and said payments to continue until the principal amount of the note or notes which the mortgage secures, together with interest at 6% shall be fully paid, provided, however, that the trustee will only be required to make the payments to Davis when and at the time a properly executed release is signed, acknowledged and delivered to said trustee or the purchaser or purchasers of any of the lots releasing and cancelling said mortgage on the lot or lots so sold, as provided in a certain agreement made by and between the trustee and Davis under date of September 29, 1928, reference to which agreement is hereby made.

(d) The remaining twenty (20) per cent. of said net receipts to Milton L. Hughes and W. L. Arnett, agents, in equal portions for their services and compensation in making sales hereunder.

It is further provided that when the mortgage indebtedness to Davis with interest and all the other items of indebtedness with interest have been paid as theretofore set out, then all of the net proceeds after payment of trustees' compensation, taxes and assessments should go to the agents, Hughes and Arnett in equal proportions. The contemporaneous trust agreement, plaintiff's Ex. E, to which reference is made in the trust agreement, Ex. F, was between Davis and The City National Bank of Commerce of Columbus, Ohio, trustee, and recited:

"As an inducement to the said bank to accept the trusteeship under the said trust agreement, whereby the bank is to become the trustee of real estate located in the City of Columbus, (being the land described in the mortgage to Davis) and in order to permit the subdivision of said real estate into lots or smaller building tracts, the undersigned (Davis) hereby agrees that any time before the 9th of December, 1931, the due date of the mortgage to release any one or more of the lots of said addition (Rosemary Garden Addition) from the lien in operation of said mortgage upon receipt by the undersigned (Davis) of 35% of the net proceeds of the sale of any one or more of said lots, as said net proceeds are designated in the above mentioned trust agreement when said selling price has been made in accordance with the minimum sales schedule of prices as contained in said trust agreement.

"The purpose of this agreement is to enable the trustee and owner of said addition to subdivide and sell the same in individual lots or parcels."

Davis further agreed to designate an attorney in fact to execute, acknowledge and deliver for and on his behalf due and proper releases of lots or tracts in said addition upon the payment to him of the amount provided to be paid him. It is further provided that:

"The release of any part of said addition or any one or more lots therein shall not affect the lien and operation of the mortgage for the unpaid balance of said mortgage insofar as it covers the remaining portion of said addition."

And that:

"Nothing herein shall be construed to alter or change the terms, interest rate, time limit or amount receivable of the mortgage or note."

Following the execution of the trust agreements, viz.: on the 4th day of October, 1928, the Vigors deeded to the City National Bank of Commerce as trustee, the real estate described in said trust agreements. Pursuant to the trust agreement, Ex. F, the lots were subdivided, streets and alleys were duly dedicated to the City of Columbus and several lots were sold and proper releases of the mortgage thereon were made by the authority of Davis. Davis was not a party to, nor did he sign the trust agreement, Ex. F, although he was given opportunity so to do.

It is the claim of plaintiff that the assumption of the mortgage as set forth in Part 2 of the trust agreement is a valid and binding obligation upon Arnett and that by reason thereof the plaintiff is entitled to a deficiency judgment against him. The trial court held that Arnett was not so bound:

The trust agreement, plaintiff's Exhibit F, clearly shows a consideration moving from the Vigors, the owners of the real estate, to Arnett for the obligations by him to be performed. Arnett's obligation was personal and beyond payment that would be made by the sale of the lots to which method of payment the trustee limited itself.

The benefits which he, Arnett, was to receive had the sales promotion of the Rosemary Gardens been successful would have

been substantial and Arnett stood to profit materially. The minimum sales price of the lots was in excess of $64,000.00. The maximum obligations of the parties to the trust agreement, Exhibit F, for advancements and the mortgage indebtedness, was approximately $30,000.00 plus interest.

The trust agreement in itself was not a deed and Arnett took no title to the real estate thereunder but pursuant to the trust agreement the trustee took the legal title in fee simple from the Vigors, who thereby relinquished all the estate that they had in the premises save that which was assured to them by the trust agreement. To the extent of the benefits assured Arnett from the proceeds of the sale of the lots he held equitable title to the land conveyed to the bank as trustee.

Note the language of 2, plaintiff's Exhibit F, the trust agreement, as follows: "The above property is to be conveyed," etc., then follows the assumption clause. This language following immediately the provisions for the execution and delivery of the deed to the bank as trustee for the parties including the Vigors, the owners, and Arnett, had the effect as between the parties to the deed of reading the assumption clause into the deed as definitely as if it had been printed therein. The consideration for the equitable interest that the parties had in the real estate conveyed by the deed was that set forth in the trust agreement, plaintiff's Exhibit F.

The trust agreement, Exhibit F, between the bank as trustee, which was acting for all the parties to Exhibit F, and Davis bound him to release any and all lots sold by Arnett as selling agent under the trust agreement, Exhibit F, according to the terms and conditions therein provided. In every instance Davis carried out the obligation incumbent upon him and had he not done so the trustee, acting for and on behalf of the Vigors and Arnett, could have compelled him so to do. It is true that Davis in his agreement with the trustee provided that the release of his mortgage on any one or more of the lots should not affect the lien and operation of the mortgage for the unpaid balance thereof, nor "alter or change the terms, interest rate, time limit or amount receivable of the mortgage or note." This provision, however, in view of the agreement of Davis to release all lots sold from the mortgage was an express modification of two of the terms of the mortgage, but was not in conflict with any other of the terms

of the trust agreement, plaintiff's Exhibit F, which in all of its parts recognized the Davis mortgage in every particular as therein set forth and all payments by purchasers for lots bought were to be concluded and completed as of the date that the Davis mortgage was due. The general language of the clause respecting altering or changing the terms of the mortgage would yield to the specific changes agreed to by Davis.

In the mortgage to Davis the Vigors had agreed to pay to him 125% of the proportionate mortgage charge against any lot or lots which the Vigors would sell. Under the trust agreements, Exhibits F and E, he was to receive only 35% of the net receipts after 20% of the gross receipts had been paid to the trustee and Arnett and after other expenses, taxes and assessments had been paid. Then, upon any viewpoint of the effect of the written instruments, the obligation of Arnett to assume and pay the Davis mortgage was for the benefit of Davis. If consideration from Davis is necessary to bind Arnett it appears. We are satisfied that the demands of the law are met when it appears that there is a sufficient consideration moving from Vigors, the owners, to Arnett, for his assumption of the Davis mortgage. In this situation the benefit to Davis, the holder of the mortgage, will be presumed. Durnherr v Rau, (N. Y.) 32 NE 49. And this is true though the agreement was intended also to work to the benefit of the immediate parties thereto. Federal Union Surety Co. v Commonwealth (Ky.), 129 SW 335.

There is sufficient showing upon this record that Davis acted upon and in reliance on the terms of the trust agreement, plaintiff's Exhibit F, and particularly the assumption of his mortgage by Arnett as therein provided. No other theory will account for his agreement with the bank, trustee, and his subsequent observance of the terms as to the release of his mortgage on lots sold. His action accords with the stated purpose in the last clause of this agreement.

The Ohio authorities offer no parallel on the facts to the instant cause but nothing on principle therein announced is in conflict with the theory which we adopt.

The latest Ohio case pertinent to the question is **Community Discount & Mortgage Co. v Joseph, 117 Oh St 127,** the first syllabus of which is:

"A contract in a conveyance of real estate whereby the grantee assumes and agrees to pay the mortgage indebtedness thereon may be rescinded and the grantee released therefrom by the mortgagor before the mortgagee has accepted or adopted said contract or acted on the faith thereof."

The second syllabus is:
"An answer of a grantee setting up the rescission of such contract made in good faith and for a valid consideration states a complete defense, and the burden is upon the mortgagee to plead and prove prior acceptance or adoption of such assumption contract, or action by him on the faith thereof."

The opinion in the Joseph case is devoted particularly to the rights of the parties when as against the claim of the third party on an assumption clause in a deed the premissor set up a defense of rescission. In that situation the general rule as found in 41 C. J., at page 749, is invoked at page 132 of the opinion. It is to effect:

"The assumption contract may be rescinded, or the grantee released therefrom by the mortgagor, so long as the mortgagee has done nothing to show his adoption of the contract or his acceptance of the grantee as the principal debtor. After the mortgagee has accepted or adopted the contract, or acted on the faith of it, the rule followed in the great majority of states is that it is not in the power of the parties, as against the rights of the mortgagee, and in the absence of his consent thereto, to change or annul it."

Trimble .v Strother, 25 Oh St 378, and Brewer v Maurer, 38 Oh St 543, are also cases wherein the defense of rescission was asserted against the claimed liability on the assumption contract. Essential to the defense in all of these cases was the requirement that it appear that the mortgagor had released the promisor from his obligation. In the instant case this is not claimed, nor does the evidence tend in any wise to establish it.

A very valuable note on the right of a third person to enforce a contract between others for his benefit is found in 81 A.L.R. 1271. At page 1279 the rule is epitomized supporting which citations are given from forty-four states of the Union, including Ohio:

"That one for whose benefit a contract is made may, although not a party to the agreement and not furnishing the consideration therefor, maintain an action thereon against the promisor. In other words, a third person can enforce a contract entered into between others for his benefit."

Ohio cases following the rule are Thompson, Admrx. v Thompson et, 4 Oh St 333; Emmett v Brophy, 42 Oh St 82; Poe v Dixon, 60 Oh St 124. See also 6 R.C.L. 890, Williston on Contracts, 381, 15 A.L.R. (N.S.) 399.

We are cited to the Second National Bank v The Grand Lodge, etc., 98 U. S. 75. The court there grounded its judgment against the party claiming the benefit of the assumption clause upon the propositions that there was no privity between the plaintiff and the promisee, that there was never more than an executory contract between the parties thereto and that it was for their benefit only.

In Pope v Porter, 33 Fed. Rep. 10, the doctrine of Bank v Grand Lodge was urged and the court quoted from the opinion:

"Where a debt already exists from one person to pay such debt being primarily for the benefit of the original debtor and to relieve him from liability to pay it (there being no novation) he has a right of action against the promisor for his own indemnity; and if the original creditor can also sue, the promisor would be liable to two separate actions, and therefore the rule is that the original creditor can not sue."

The court then says:
"The cases in which this rule is applied are those in which the right of action is based solely upon the naked promise to pay; it being held that the maker thereof should not be held liable to two actions on an agreement made solely with one."

The obligation which Arnett assumed on the mortgage was definite and to that extent it must be presumed the ▮▮▮▮▮▮ ▮ Vigors abated the amount which otherwise they would have required from Arnett in consideration of making the deed and agreement that Arnett should have the benefits assured to him by the contract, plaintiff's Exhibit F. This abatement is analogous to that which is made in purchase price where a grantee assumes and agrees to pay the mortgage

indebtedness of the grantor upon the land deeded.

This proceeding on appeal is on law based upon the claims that the finding and judgment of the trial court ██ is manifestly against the weight of the evidence and contrary to law. There is no dispute in the facts. The judgment will be reversed. Judgment for plaintiff as prayed and cause remanded.

CRAIG, PJ, and BARNES, J, concur.