**ABCO–BRAMER, INC., Appellant,**

v.

**MARKEL INSURANCE COMPANY and Service Fabrication Company, Appellees.**

**No. 1999–CA–002915–MR.**

Court of Appeals of Kentucky.

Nov. 22, 2000.

Discretionary Review Denied
Oct. 17, 2001.

---

Kirk Hoskins, Louisville, KY, for Appellant.

Pamela K. Doggett, J. Randall Reinhardt, Lexington, KY, for Appellee, Markel Insurance Company.

Before BARBER, JOHNSON, and SCHRODER, Judges.

## OPINION

SCHRODER, Judge:

This is an appeal from a judgment entered in favor of a surety on a performance bond in an action by a subcontractor who was not fully paid for its leasing of certain rental equipment to the contractor on the project. The sole issue is whether the performance bond covers the rental equipment used on the project. From our review of the record and applicable law, we believe that it does. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

On July 17, 1997, Service Fabrication Company (the "contractor" or "Service Fabrication") entered into an agreement with the Commonwealth of Kentucky to provide structural steel for the Commonwealth Convention Center Expansion, a public improvement project located in Jefferson County, Kentucky. The contract was in the amount of $6,986,000 and required a payment and performance bond for 100% of the contract price. On July 28, 1997, Markel Insurance Company ("Markel" or the "surety") entered into an agreement with Service Fabrication entitled "PAYMENT AND PERFORMANCE BOND" whereby Markel agreed to be the surety on the project. The bond agreement specifically incorporated by reference all of the terms of the contract between Service Fabrication and the Commonwealth.

During the course of the expansion construction, appellant, ABCO–BRAMER, Inc. ("ABCO"), which is in the equipment rental business, leased certain equipment to Service Fabrication for use in the project. It is undisputed that upon completion of the project, Service Fabrication owed ABCO $42,625.98 for the lease of its rental equipment. Consequently, ABCO

filed and perfected a mechanic's lien in the amount of $42,625.98. Thereafter, ABCO filed a claim with Markel seeking recovery of the $42,625.98 under the payment and performance bond. Markel refused to pay the claim on grounds that the payment and performance bond did not cover rental equipment. ABCO then filed a petition for declaratory judgment seeking payment under the bond. The court initially ruled in favor of ABCO, but upon a motion to reconsider, entered its final judgment in favor of Markel, adjudging that rental equipment was not covered under the payment and performance bond. This appeal by ABCO followed.

Besides the provision in the payment and performance bond stating that the contract between Service Fabrication and the Commonwealth is "incorporated herein by reference and is made a part thereof", the bond also provided as follows:

NOW THEREFORE, the conditions of this obligation is [sic] such that if the Principal [Service Fabrication] shall faithfully perform the terms and conditions of the contract in all respects on their part, and shall pay all obligations incurred in connection therewith, all such other obligations of every form, nature and character, and shall save harmless the Owner [the Commonwealth] from all and any liability of every nature, kind and character which may be incurred in connection with the performance or fulfillment of such contract or other such liability resulting from negligence or otherwise on the part of such Principal, and further shall save harmless the Owner from all costs and damage which may be suffered by reason of the failure to fully and completely perform said contract and shall fully reimburse and repay the Owner for all expenditures of every kind, character and description which may exist on the part of the Principal in connec-

tion with the performance of said contract, *and further that the Principal shall pay all lawful claims of all persons, firms, partnerships, or corporations, for labor performed and for the payment of all unemployment contributions which become due and payable under the Unemployment Insurance Law, and material furnished in connection with the performance of the contract, and for insurance provided by the contractor under the contract, and that the failure to do so with such persons, firms, partnerships, or corporations shall give them direct right of action against the Principal and Surety under the obligation;* ... (emphasis added).

The pertinent provision in the contract between Service Fabrication and the Commonwealth stated as follows:

The Contractor shall furnish a performance bond satisfactory to the Owner in an amount equal to one hundred percent (100%) of the Contract Sum as security for the faithful performance of the contract. The Contractor shall also furnish a payment bond satisfactory to the Owner in an amount equal to one hundred percent (100%) of the Contract Sum *for the protection of all persons performing labor or furnishing materials, equipment or supplies for the Contractor or his subcontractors for the performance of the work provided for in the contract,* including security for payment of all unemployment contributions which become due and payable under Kentucky Unemployment Insurance Law. (emphasis added).

■ In its initial determination that rental equipment was covered under the bond, the court based its decision on the fact that the term "supplies" was included in the performance bond, and the definition of "supplies" in KRS 376.195(4) specif-

ically includes rental equipment. KRS 376.195 provides in pertinent part:

(1) "Labor" includes all work done by teams, trucks, machinery, and mechanical equipment, whether the owner furnishes a driver or operator or not, but it shall not include labor performed, by any officer, superintendent or stockholder of any corporation even though he may perform manual labor on the public work;

(2) "Materials" includes all materials of every kind or character used in the public improvement which shall remain as a part of the completed improvement, and all the materials substantially consumed or the value thereof substantially destroyed in making the public improvement, including explosives, gasoline, oil, grease, form lumber and other similar articles; and,

(3) "Supplies" includes small tools and equipment reasonably necessary in performing the work required to be done, including picks, shovels, sledge hammers, axes, pulleys, wire cables, ropes, and other similar items costing not more than fifty dollars ($50.00) per item, and tires and tubes furnished for use on vehicles engaged in the performance of the work;

(4) "Supplies" also includes the cost of labor, materials, and repair parts supplied or furnished for keeping all machinery and equipment used in the performance of the work in good operating condition; and, shall include the agreed or reasonable rental price of equipment and machinery used in performing the work to be done;[.]

On the motion to reconsider, the court held that only the language in the latter portion of the performance bond (which states when a claimant has a direct right of action against the surety) can dictate what is covered under the bond for purposes of recovering directly from the surety. Since that portion of the bond only refers to "materials" and "labor", the court adjudged that rental equipment was not included since the statutory definition of "materials" did not include "supplies".

■ From our review of the issue, even if we ignore the broad language in the beginning of the bond and agree that the statutory definition of "materials" does not include "supplies" (rental equipment), we nonetheless believe that the terms of the bond covered "supplies" (rental equipment), as the contract language so providing was explicitly incorporated into the bond. The bond specifically incorporated all of the terms of the contract which included a provision mandating that a bond be secured for the purpose of protecting "all persons performing labor or furnishing materials, equipment or *supplies* for the Contractor or his subcontractors for the performance of the work provided for in the contract, . . ." (emphasis added). With regard to performance bonds, it has been held that if the contract is incorporated into the bond, the bond and the underlying contract should be read together to determine the intention of the parties as to what and who is covered under the bond. *Royal Indemnity Co. v. International Time Recording Co. of New York*, 255 Ky. 823, 75 S.W.2d 527 (1934); *Federal Union Surety Co. v. Commonwealth*, 139 Ky. 92, 129 S.W. 335 (1910); *Blair & Franse Const. Co. v. Allen*, 251 Ky. 366, 65 S.W.2d 78 (1933). Although "supplies" are not specifically mentioned in the latter portion of the bond addressing the direct right of action against the surety, the performance bond was required to cover "supplies" if it were to comply with the provision in the contract protecting persons furnishing supplies to the contractor.

■ Markel argues that the broad language in the beginning of the bond, the

"hold harmless" provision, only benefits the owner and does not allow for a direct right of action against the surety under that provision. Under Kentucky law, a contract must be construed as whole, and all writings that are part of the same agreement are construed together. *Cook United, Inc. v. Waits*, Ky., 512 S.W.2d 493 (1974). Although the "hold harmless" provision by itself would not have allowed for a direct right of action against the surety by a third party, when all the parts of the contract are read together, we believe that the parties demonstrated an intent that a party who furnished supplies would be allowed to proceed directly against the surety.

Markel also cites certain Kentucky cases for the proposition that rental equipment is generally not covered under a performance bond. *E.g., Century Indemnity Co. of Chicago, Ill. v. Shunk Manufacturing Co.*, 253 Ky. 50, 68 S.W.2d 772 (1934); *Thew Shovel Company v. Massachusetts Bonding & Insurance Co.*, 261 Ky. 712, 88 S.W.2d 960 (1935). However, those cases were premised on the fact that rental equipment was not considered materials or supplies at that time, and were rendered prior to the enactment of KRS 376.195 in 1954 which specifically includes rental equipment in the definition of "supplies".

Markel also cites *Traylor Bros., Inc. v. Indiana Equipment*, Ky., 336 S.W.2d 590 (1960), in support of its position that performance bonds do not cover rental equipment. In its brief, Markel states that even after the enactment of the 1954 statute specifically including rental equipment in the definition of "supplies", "[t]he Court again held that neither the sale nor the rental of equipment was 'supplies' as the term was used in the bond." From our reading of *Traylor Bros.*, Markel's analysis of the Court's holding is inaccurate. In *Traylor Bros.*, the controlling issue was whether the transaction was a rental agreement or a conditional sale. The Court held that it was a conditional sale. In what we believe was dicta, the Court stated:

> Leaving aside the mechanics' lien statute it is clear that neither rental nor purchase of equipment constitutes "supplies" within the meaning of the contractor's bond.

*Id.* at 593. However, the Court did acknowledge that if the mechanics' lien statute is applied, rental equipment is expressly included in the statutory definition of "supplies". *Id.* The Court went on to rule that rental of equipment does not include the purchase price of the equipment. *Id.* The Court then determined that the rental value of the equipment was not recoverable because there was no rental contract. *Id.* In our view, this suggests that the Court would have allowed the recovery of the rental value of equipment if a valid rental contract had existed. In the instant case, it is not disputed that ABCO had a valid rental agreement with Service Fabrication.

In sum, we believe the trial court erred in ruling that the performance bond did not include rental equipment. Accordingly, we reverse and remand for proceedings consistent with this opinion.

ALL CONCUR.