## Charles H. Conner & Co. v. Mason.

(Decided May 16, 1911)

### Appeal from Graves Circuit Court.

Contractor—Lien of Material Man—Particular House—The material man who sells material to a contractor on the credit of the contractor and without knowing on what house the material is to be used, has no lien on the property on which the material is used.  To have a lien the material man must furnish material for a particular house.

R. RUTHENBURG and W. H. HESPER for appellant.

J. P. EVERS for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HOBSON.— Affirming.

W. S. Mason made a contract with A. H. Hall to cover his house with a certain kind of tin shingles.  Hall bought the shingles from Charles H. Conner & Co. and covered the house.  Mason paid him the contract price, but he failed to pay Conner & Co. for the shingles.  There-

upon they asserted a mechanic's lien upon the property, Hall having become bankrupt. Section 2463, Ky. Stat., provides:

"A person who performs labor or furnishes materials in the erection, altering or repairing a house, building or other structure, or for any fixture or machinery therein, or for the excavation of cellars, cisterns, vaults, wells, or for the improvement, in any manner, of real estate by contract with, or by the written consent of the owner, contractor, sub-contractor, architect or authorized agent, shall have a lien thereon, and upon the land upon which said improvements shall have been made or on any interest such owner has in the same, to secure the amount thereof with costs."

Hall ran a tin shop and store in Mayfield; he also contracted for tin work in the locality. It is insisted for Mason that Conner & Co. did not furnish material for the repairing of the house, but that they sold the shingles to Hall as a merchant, who bought them as a merchant and supplied them for the job referred to. Mason testitified that as near as he could remember his contract with Hall was made about the 11th or 12th of October, 1909; that he contracted for the wood work on September 30, and it was some ten or twelve days afterwards before he closed the trade with Hall for the tin work. Hall testified that he ordered the shingles in September from Conner & Co., in Louisville, and that the contract with Mason was made about the 10th of October, or between the 9th and 12th of October. The correspondence of Hall and Conner & Co. was produced. This showed that on September 18th Hall wrote to Conner & Co. asking them to give him the price on tin shingles. They answered this letter on the 20th, giving the price and telling him that they had shipped him some samples. On September 22 he answered their letter and asked the price on two styles that they had sent. They answered this letter on September 23. The next letter passing between them is as follows:

"Mayfield, Ky., Oct. 6, 1909.

"Chas. H. Conner & Co.,

"Louisville, Ky.

"Gentlemen—You will please ship on October 12th —25 squares 'Tite lock' painted tin shingles, 16x14, style 'B.'                    Yours truly,

"A. H. HALL.

"I have had a hard time trying to land this job, I have had a hard fight with the Cartright shingle as it has quite a reputation in this city. The parties here tell the trade that Cartright is the only shingle that is made of full weight, plate, and I concluded to use style 'B.' Give them to me as low as you can, as I have a close job in the first one of this shingle.

"A. H. H."

It will be observed that though this letter is dated October 6, in the postcript he says that he has had a hard time trying to land this job, and also says that he has a close job "in the first one of this shingle." It is clear from the evidence that Mason's job was the only one that Hall had with this shingle, and so this postcript could have referred only to the Mason job. The shingles were shipped on this letter and were put on the house. Finding on October 26 that he was short of shingles for the job he wrote them: "I like (lack) three squares ordering enough for this job I now have on hand." Thus showing that he referred then to the same job that he referred to in the previous letter. On these facts the circuit court dismissed the petition of Conner & Co., and they appeal.

As the transaction between Hall and Conner & Co. was by letter, these letters are the best evidence of the dates of the transaction. We conclude from the postscript to the letter above quoted that Hall had landed the job when that postcript was written, and that the shingles were ordered for the job. The fact that Hall ran a tin shop and store does not affect the rights of Conner & Co. under the statute if the shingles in question were bought by Hall as a contractor for the Mason house, and Conner & Co. in fact furnished the material to Hall as the contractor for that house.

But it is clear from the proof that Conner & Co. sold the shingles to Hall upon his personal credit without knowing what house they were to be used on and if Hall, after he got the shingles had used them for any other purpose they could not have complained. They simply shipped the shingles to Hall upon his order without knowing anything of Mason or his house. In Chapin v. Persse. &c., Paper Works, 79 Am. Dec., 263, it was held by the Supreme Court of Connecticut that there was no lien for building materials sold generally and in a note to that case the learned editor says:

"The mechanic's lien law contemplates a contract or agreement more specific than an ordinary sale of materials. It should be understood between the parties that the materials are to be used in the erection or reparation of a building. If a material-man sells his material without any understanding as to their application, he can assert no lien upon the building upon which they may be used. He relies exclusively upon the credit of the buyer, and takes no security. He does not sell for the special purposes named in the statute, but for any purpose that may seem good to the buyer.   *   *   * Equally fatal to the lien is it that the materials were furnished exclusively upon the credit of the contractor, for the transaction then is an ordinary sale to the contractor, out of which no lien can arise. It is necessary that the materials be furnished for the specific purpose named in the statute, for the erection, construction, or reparation of a building and the like."

The same conclusion was reached by the Supreme Court of Illinois in Hill v. Bishop, 79 Am. Dec., 333, where it was held that there was no lien for lumber furnished upon an open general account without reference to its being put into any particular building. To same effect see Esslinger v. Huebner, 22 Wis., 632; Tatum v. Cherry, 12 Oregon, 135; Mills v. Terry Manufacturing Co., 91 Tenn., 469; Footman v. Pusey, 45 Ga., 651; Colorado Iron Works v. Riekenberg. 4 Idaho, 705; Cook v. Rome Brick Co., 98 Ala., 401; Whittier v. Puget Sound Co., 31 Am. St. Rep., 944; Phillipps on Mechanic's Liens, Sec. 127; Boisot on Mechanic's Liens, section 120, 20 Am. & Eng. Encyc., 344, 27 Cyc., 48.

In the case before us Conner & Co. shipped the shingles to Hall upon his personal credit, and he had the right to do with them as he pleased. They did not know what had been done with the shingles until after he had failed when they found out that he had put them upon Mason's house. The statute is a severe one, and should not be extended by construction beyond its terms. The material must be furnished for a particular house in order that the man furnishing the material shall have a lien on the property. Section 2463, Ky. Stat., above quoted, contains this proviso:

"Provided that such lien shall not take precedence of a mortgage or other contract, lien or bona fide conveyance for value without notice, duly recorded or

lodged for record according to law, unless the person claiming such prior lien shall, before the recording of such mortgage or other contract lien or conveyance, have filed in the clerk's office of the county court of the county wherein he shall have performed labor or furnished material, or shall expect to perform labor or furnish materials, as aforesaid, a statement showing that he has performed or furnished, or that he expects to perform or furnish, such labor or materials, and the amount in full thereof, and his lien shall not, as against the holder of said mortgage or other contract lien or conveyance, exceed the amount of the lien claimed, or expected to be claimed, as set forth in such statement. The statement aforesaid shall, in other respects, be in the form of the tenor prescribed by section 2468."

In order for the lien to take precedence of a mortgage or other contract lien or bona fide conveyance for value without notice, the statement must be filed, and this statement by section 2468 must contain "a description of the property intended to be covered by the lien sufficiently accurate to identify it." The proviso simply requires as against purchasers for value a record of the fact which by the previous part of the section are essential to the existence of the lien as against other persons. It was not contemplated that a person who could not comply with the proviso for the reason that he had no particular property in view, should have a lien against all persons other than subsequent purchasers for value. It is true that in a few States a lien in such cases as this is sustained, but in most of them the ruling rests on the peculiar wording of the statute of the State. Under a statute like ours the weight of authority sustains the rule we have laid down.

Judgment affirmed.