**CENTRAL CONTRACTORS SERVICE, Inc. v. OHIO COUNTY STONE CO., Inc. et al.**

**WILLIAMS TRACTOR CO., Inc. v. CENTRAL CONTRACTORS SERVICE, Inc.**

Court of Appeals of Kentucky.

March 28, 1952.

As Modified on Denial of Rehearing Dec. 5, 1952.

As Extended on Denial of Rehearing Feb. 27, 1953.

18

Woodward, Bartlett, Hobson & Catinna, W. Mallam Lake, all of Hartford, for appellant.

Otto C. Martin, Hartford, Byron, Sandidge & Holbrook, Owensboro, for appellee.

CLAY, Commissioner.

In general the question presented is the correctness of a judgment upholding several statutory lien claims. There have been consolidated six actions brought against Central Contractors Service, Inc. (hereinafter designated "Central") in which the plaintiffs claimed liens on property of a bankrupt company purchased by it. Five claims were allowed. The sixth was denied.

The Indianhead Mining Corporation, Inc., (hereinafter designated "Mining Co.") an Illinois corporation, prior to November 29, 1948 acquired a strip of land in Ohio County, Kentucky. It also purchased mineral leases from several adjoining land owners, and began strip coal mining. A steel tipple was erected, along with a powerhouse, machine shop and other buildings. Certain equipment and materials were purchased for the company by its vice president from the lien claimants.

In 1949 the Mining Co. filed a petition in bankruptcy in the Federal Court for the Northern District of Illinois. The assets of the bankrupt, valued at approximately $150,000, were sold to Central for $32,000. The bill of sale, transferring the title to the purchaser, provided that the property sold should be "subject to any and all liens and claims whatsoever."

On May 21, 1949, petitions in equity were filed in the Ohio County Circuit Court, asserting the liens of three claimants, and a general order of attachment was obtained. Subsequently the other lien claimants were made parties.

A. We will first consider the part of the judgment allowing liens. Central does not deny the bankrupt was indebted to appellees, nor does it deny the use of the equipment and materials. However, it raises six objections to the judgment.

■■ 1. *Description of property.* KRS 376.010 provides that the statement of lien (filed in the county clerk's office) shall have "* * * a description of the property intended to be covered by the lien sufficiently accurate to identify (it)". The description must itself furnish needed information to identify property to the exclusion of other property. Headrick et ux. v. Waterbury, 277 Ky. 288, 126 S.W.2d 411. The lien statements criticized by Central all locate the property as being two and one-half miles north of Beaver Dam, Kentucky, on Highway No. 62 in Ohio County, and on the north side of the Illinois Central Railway's right of way. They identify it as the land, buildings, etc., being used by the Mining Co. These descriptions were clearly sufficient to describe the property involved.

■ KRS 376.110 requires that the "petition shall allege the facts necessary to secure a lien, and shall describe the property charged and the interest the plaintiff seeks to subject." The petitions, after alleging the facts with respect to the operation of the Mining Co., the sales of equipment and materials, and the steps taken to perfect the respective parties' liens, then go on to assert that the claimants have a statutory lien on either "all the property and assets" of the Mining Co. or the "real estate described herein and the personal property and assets, tipple, building," etc. It is clear that each of these petitions identifies the property to be charged as all that used or occupied by the Mining Co. at the site of its mining operation. This was an adequate description.

■ (2) *Scope of lien.* Central asserts that a lien should not have been allowed on the personal property owned by the Mining Co. However, KRS 376.140, which relates especially to mining operations, provides that any person who performs labor or furnishes materials to the lessee of a mineral lease shall have a lien on the entire interest of the lessee, "including * * * machinery and equipment". All of the property used by the Mining Co., both realty and personalty, was part of one mining operation. It is true that there were several items of personal property which in the ordinary case might not be properly subject to this type of lien. However, Central has contended on this appeal that the value of

the real estate subject to lien is sufficient to satisfy the claims, and it is apparent that they may be satisfied by the sale of the improved real estate without including miscellaneous personalty on which Central claims no lien attached. Therefore, this contention is without merit.

■■ (3) *Contract.* It is incumbent on a lien claimant to allege and prove a specific contract between himself and the purchaser of the goods. KRS 376.010. Tischendorf-Chreste Lumber Co. v. Hegan, &c., 134 Ky. 1, 119 S.W. 163. Central urges that this was not done. We think the petitions sufficiently allege a contract by stating the equipment or materials were furnished "At the special instance and request of its (the Mining Co.) officers and agents * * *." Appellees concede that there was no written contract, but claimed the existence of an oral one. The evidence established that the equipment and material supplied by each of the appellees were used in the construction and operation of the mine. It was purchased by an authorized officer of the Mining Co. There was a valid contract.

Central argues vigorously that appellees' proof failed to show that when the equipment and materials were ordered from appellees there was a specific understanding as to how they were to be used, and that, therefore, the liens should fail. This contention is based on the rule announced in Charles H. Conner & Co. v. Mason, 143 Ky. 635, 137 S.W. 235, to the effect that if the seller does not know of the specific structure in which the material sold will be used, he cannot have a lien.

■ In that case it appeared a manufacturer sold shingles to a merchant who also engaged in the construction business. While the buyer intended to, and did use them on a particular job, the seller was not aware of that fact. Without knowledge on the part of the seller and an intention to claim a lien on specific property, it was held ineffective as against the owner of the house.

In the present case the equipment and materials were furnished for use in a single mining operation. The premises of the Mining Co. must be considered as a unit. As said in 36 Am.Jur., Mechanics' Liens, Section 4: "The purpose of mechanic's lien statutes is to permit a lien upon premises where benefit has been received by the owner and where the value or condition of the property has been increased or improved by reason of the furnishing of labor and materials."

In the present case we have definitely identifiable premises which were improved by the equipment and materials furnished by appellees. It is stated in 36 Am.Jur., Mechanics' Liens, Section 169: "* * * when work has been done, or materials furnished, on a distinct part of an extensive improvement or works, it is generally considered that the laborer or materialman may be allowed a lien on the entire property * * *."

It was thus not necessary that the materials and equipment be traced into particular structures because they were furnished by appellees for use in a single mining operation with an intention on their part to claim a lien upon the entire premises.

■ (4) *Personal judgment.* Central next argues that the judgment in the lower court was a personal one and was, therefore, improper. It is true that in form the judgment appears a personal one against Central. This form was used in fixing the amount of appellees' claims. After finding each specific amount, the court's order then goes on to adjudge a statutory lien against Central's assets to secure the payment thereof. We construe the judgment as not being personal, and as simply subjecting Central's property to a lien for the specific amounts set forth.

■ (5) *Attachments.* Central next urges that the court erred in adjudging a lien against its property by virtue of the general orders of attachment issued, on the ground that appellee had no right to attach the personal property since the value of the realty was more than sufficient to satisfy the claims. However, Central executed a bond under Section 221 of the Civil Code of Practice discharging these attachments. When this bond was executed, Central was estopped to challenge the sufficiency of the

grounds therefor. Fleming v. Campbell, 309 Ky. 527, 218 S.W.2d 55.

(6) *Incompetent Evidence.* Certain testimony concerning conversations with an officer of the Mining Co., who did not himself testify, was admitted in evidence. This testimony established that the Mining Co. was indebted to appellees. Since this fact was admitted by Central, the evidence, even if incompetent, was not prejudicial.

B. With respect to the claim of appellee, W. H. Greer, Central complains because he did not assert a lien until after the special commissioner appointed by the lower court advertised for claims. He established the existence of a contract between himself and the Mining Co., the use of the products, and the description and location of the mining property. An itemized statement of his claim had been properly filed with the county clerk. The procedure followed was authorized by KRS 376.120.

C. Appellant, Williams Tractor Company, sold two tractors to the Mining Co., and from time to time made repairs on them at the mine. The claimed lien is for repairs and spare parts. This appellant at no time filed a statement of lien prescribed by KRS 376.010 (2). The court disallowed the claim because of such non-compliance. The Tractor Company urges that the failure to file the statement within the requisite time was due to the injunction issued by the Federal Court in the bankruptcy proceeding.

The injunction issued by the Federal Court, after the Mining Co. petitioned for a corporate reorganization, provided as follows: "that all creditors of the debtor be restrained and enjoined from further proceeding, except in this case, until further order of this court." It is argued that to file a statement of lien would have constituted a violation of the injunction. However, such filing is clearly not a "proceeding" which would have been a violation of the order. See In re Willax, 2 Cir., 93 F. 2d 293. Because of the failure to comply with the statute, this appellant perfected no lien.

It is contended, however, that if no statutory lien existed, a common law or equitable lien should be enforced. A common law lien is based upon possession, which this appellant did not have. An equitable lien may be enforced only in special cases where the party asserting it shows some superior right. Such is not shown because appellant was in the same category as other general creditors. Central assumed the "liens" upon the property purchased by it, but this must be construed to mean only those which had been or would be legally established or perfected. Otherwise all general creditors could claim an equitable lien because their claims in right and justice should somehow have been paid. Central did not assume such an equitable obligation, and the facts do not justify the application of equitable principles to satisfy the unsecured claim asserted.

The judgment is affirmed.